Printing Company vs. Furniture Concern, Limited.

statutes passed expressly to provide for the sale of lands acquired by the State at tax sale.

The suit being a petitory action against a defendant claiming title, this title if still vested in the State would be just as effectual a bar to the suit as if vested in defendant; hence, plaintiff has no interest in the question. Hennen Dig., p. 1114. The possession taken by the sheriff when he made the seizure is joined to that of the present time, and the defendant is presumed to have been continuously in possession. Brien vs. Sargent, 13 Ann. 198.

Finally, plaintiffs contend that the land adjudicated to the State at the sheriff's sale is not the same for which suit is now brought. The land sold is the land that was owned by Joseph Désert. This is shown by a plat introduced in evidence by plaintiffs. The description in the deed agrees with the description in the plat in name, boundaries and acreage, and differs only in that section 25, which is the land in controversy, is put by the deed in township 10, range 8, whereas by the plat it appears to be in township 10, range 7. That this is an immaterial error is not debatable, in the light of past adjudications of this court bearing on errors in descriptions according to government surveys. Error in the range has time and again been held immaterial where by the other parts of the description, and even by competent proof *aliunde*, the land was identified. See Bryan vs. Wisner, 44 Ann. 832, and cases there referred to.

For these reasons, we find no error in the judgment of the Court of Appeal, and the same is hereby sustained.

BREAUX, J., dissents.

Rehearing refused.

---

No. 13,991.

CITY ITEM CO-OPERATIVE PRINTING COMPANY VS. PHOENIX FURNITURE CONCERN, LIMITED.

SYLLABUS.

1. Ordinarily, the only excuse for the existence of a receivership is that the property of the insolvent estate might be conserved and applied to the claims of creditors, and the expenses and charges of administration should be in proportion to the interests involved and the results achieved, always remembering that the property administered is the common pledge of the

creditors, and that to realize the payment of their claims, as far as possible, in the order in which the statutes provide, is the first and paramount object of the law. It is this result that is to be aimed at, and this court will sternly enforce it in every case coming before it.

2. Unpaid subscriptions to the capital stock of a limited corporation are assets which the receiver must collect and apply to payment of debts, and his gestion is not complete until this is done, or a satisfactory showing made that it cannot be done.

3. When it appears on the face of the record that assets of the estate are not accounted for in what is presented as a final account, the case will be remanded, and this, too, notwithstanding failure to specially mention and complain of, in the opposition filed, this omission of assets.

4. And this Court will not undertake the task of delving into voluminous books and other records brought up in the original by consent of counsel, to eke out the showing or want of showing made in this respect by the final account.

5. A former receiver, who in suit to destitute him, resigns, must settle with his successor for his gestion of the estate, and his bond should not have been permitted to be cancelled until such settlement is had.

6. The necessity for provoking an account by a creditor who demands payment is not to be superseded by a mere application to be paid entered upon the receiver's order book. Nor are creditors precluded in the matter of contesting claims set up against an estate except in the way the law provides, to-wit:—by the filing of an account and its homologation contradictorily with them after the notice and delays required to be given.

7. Funds in the receiver's hands subject to no *special* privilege must be first applied in paying the claims which are entitled to rank as general privileges priming the lessor's privilege, and only for the balance that may be left over after exhausting the fund subject to no special privilege, can recourse be had against the fund which is subject to the lessor's special privilege.

8. If there be authority in law, in case of a receivership, for the appointment of an attorney for absent creditors, his compensation is a charge on the sums coming to such creditors, and not on the mass of the creditors.

A PPEAL from the Civil District Court, Parish of Orleans—*King, J.*

*Dinkelspiel & Hart,* for A. H. Kaiser, Receiver, and E. M. Cahn, Attorney for Receiver, Appellees.

*E. Howard McCaleb,* for Frank T. Howard, Opponent, Appellant.

*S. S. Prentiss, Jr.,* Attorney for Absent Creditors, Appellee.

The opinion of the court was delivered by

BLANCHARD, J. This case is here on appeal by Frank T. Howard

from the action taken by the trial court on the final account filed by the receiver for the defendant corporation.

Howard was the owner of the store building in which the business of the corporation was conducted and the lessor of the corporation. He is a creditor of the concern for rent of the premises.

He opposed generally each and every item on the account and specially objects to the rank of privilege accorded him on his claim for rent.

In October 1899 three persons, Chas. Weill, Ad. Koppel and Will. A. Taylor, incorporated themselves into the limited concern which figures as the defendant herein.

The capital stock was placed at fifty thousand dollars, to be represented by five hundred shares of the par value of one hundred dollars each.

Weill subscribed for 160 shares, Koppel for 150 shares and Taylor for 10 shares, making 320 shares of the 500 shares the charter authorized. It does not appear that any one else subscribed to the stock.

Weill, it seems, disappeared from connection with the concern and Chas. Kirsch took his place.

Koppel became President and Treasurer, Kirsch Vice-President and Secretary, and these two, with Taylor, constituted the Board of Directors.

It would seem that of the $32,000.00 subscribed by Weill, Koppel and Taylor nothing was paid in to constitute the active capital of the concern, for we find that after a little more than five months of existence the corporation was in a bad way. Debts were falling due and there was no money to pay, notwithstanding the fact that the months the concern had been in existence were the best business months of the year.

The stock of goods, or considerable part thereof, had not been settled for, which should have been the case had the shares subscribed for been paid in, and the factory cost of the furniture on hand was only $16,-604.08.

The Board of Directors met, passed a resolution admitting the inability of the concern to meet its obligations, declared the appointment of a receiver was necessary, and authorized the President to provoke the appointment of a receiver, or to consent to such appointment on behalf of the corporation.

This was followed by a petition filed by the present nominal plaintiff asking the appointment of a receiver. The petitioner averred itself to be a creditor *for advertising* done for the corporation, though 'no amount of indebtedness is mentioned.

The petition was answered the same day by the President of the concern, who admitted the allegations thereof and consented to the receivership prayed for.

An order followed appointing Koppel (the corporation's President) receiver and authorizing him to administer the affairs of the concern as such, first requiring him to give bond in the inadequate sum of $4000.00.

The receiver then petitioned for the taking of an inventory, for the appointment of an attorney at law to act as counsel to him, and for the appointment of an attorney for absent creditors.

An inventory was ordered, an attorney to represent absent creditors was named, and the same attorney who had filed the petition for appointment of receiver was named as counsel to the receiver.

The receiver then petitioned for authority to conduct the business of the corporation as a going concern, and an order to that effect was made.

Within a few days following the appointment of receiver certain creditors took action to vacate the receivership on the ground that the whole proceeding was a scheme devised and carried on solely for the benefit of the three stockholders of the concern and not with the view of benefiting its creditors; that its only purpose was to hold the creditors at bay, tie their hands, stay legal proceedings to collect their debts, and thus enable the three parties who constituted the Board of Directors to hold on to the property and assets of the corporation.

These creditors specially objected to Koppel as receiver on various grounds, among others that his administration as President of the corporation had brought ruin upon it, and this demonstrated his unfitness and incapacity to conduct its business as receiver, and that if the receivership was to be continued, another man should be appointed.

The result of this attack was that Koppel resigned the receivership and A. H. Kaiser was appointed in his stead.

An inventory was taken. Its taking was made to occupy eleven days. The first day, which was Saturday, after appraising property to the amount of $1690.18 only, an adjournment over to Monday was had,

when property to the amount of $1956.33 was appraised. Then an adjournment was had to Tuesday, when property to the amount of $2263.97 was appraised. Wednesday's work showed an appraisement of $2315.05; Thursday's work showed an appraisement of $111.23; Friday's $153.06; Saturday's $739.64; Monday's $1367.08; Tuesday's $145.44; Wednesday's $2154.38; and Thursday's $766.93. Total $13,663.29.

The notary and two appraisers, who officiated at this inventory, followed it up by presenting a bill for $500.00—$300.00 for the notary and $100.00 each for the appraisers. These charges were excessive and exorbitant. This inventory was unnecessarily lengthened in the taking thereof. Two days, instead of eleven, we think should have sufficed, and a charge of one-fourth, or at most one-third, of that preferred was sufficient.

The receiver and his attorney should have vigorously opposed the bill presented and should have appealed from the ruling allowing the notary $200.00 and the appraisers $200.00. There was error in this allowance.

This receivership and its administration resulted in injury to creditors. It was a mistake from the first. The proceeds of the sale of its property were wasted in expenses and charges.

The only parties benefited were the three stockholders, who were retained in the employ of the concern at the same salaries they had been receiving, their clerks, the receiver, his attorney, and others to whom costs were paid or proposed to be paid.

The receiver failed in his duty in respect to rendering accounts of his administration. Section 9 of Act 159 of 1898 requires quarterly statements of their gestion to be filed by receivers who are vested with powers of administration. This is not a merely directory provision of law. It *shall* be done, is the mandate of the statute.

No account was filed until nearly one year had elapsed and then its filing was the result of action taken by creditors to compel it.

This account is presented as a final account.

It shows aggregate sales of goods at private sale by the receiver from April to December 1900, inclusive, to have been $19,474.66.

It shows aggregate purchase of goods during that period to replenish stock, $3,944.17.

It shows the aggregate of expenditures during that time in conducting the business to have been $12,311.94.

On this showing there is a balance on the face of the account of $3,218.55 in favor of the receivership, which, strange to say, is not carried forward on the account, nor included in the funds which the receiver proposes to distribute according to the scheme of his account. Nor is this explained in any evidence submitted or statement made by the receiver.

There is error in this so great that even without formal opposition pointing it out, the interest of justice warrant the reversal of the judgment and the remanding of the case.

After conducting the business eight or nine months, the remainder of the stock of goods on hand, together with the book accounts, assets, store fixtures, occupancy of the leased premises for the unexpired term of the lease, etc., was sold at auction and the auctioneer paid over to the receiver $5,366.65, to which was added $514.63 realized from collections of open accounts, etc., following the auction, making, together, $5,881.28, from which, before filing the account, the receiver paid out $604.23, leaving a balance of $5,277.05, as to which the receiver, in his account, submitted a scheme of distribution.

Preceding the auction sale the receiver had asked for another appraisement and this was ordered. Kirsch and Taylor, two of the three stockholders and directors of the corporation, were appointed appraisers. They were allowed by the receiver for the service thus rendered $100.00 each.

It thus appears that the taking of the inventory and appraisements made of this small estate has cost $600.00 in all—a charge out of all proportion to the interests involved and grossly excessive.

The allowance of $100.00 each to Kirsch and Taylor is error. If this second appraisement was necessary at all, which seems doubtful in view of the fact that the goods appraised were about to be sold at auction for what they would bring in cash, so far as we are able to make out what the terms of the sale were from the meagreness of the record in this regard, half the amount allowed is deemed sufficient.

The charge and allowance of $2,375.00 as fees to the attorney for the receiver is excessive. A fee of ten per cent. upon the amount, $5,277.05, what the account shows is the only sum in hand for the payment of charges and costs and for distribution to the creditors (out of which

not a dollar will be available for ordinary creditors), together with $300.00 as a fee for advice to the receiver and services rendered him in his nine months' administration of the business of the corporation as a going concern, making together $827.70, is deemed a sufficiently large allowance for legal services out of an estate of the size of this one.

The allowance of $1,125.00 to the receiver is deemed excessive. It should be reduced to $1,000.00 all told.

The attorney appointed to absent creditors was put down on the account at $500.00, but reduced by the trial court to $250.00, and allowed for that sum as a privileged debt on the mass of the funds for distribution.

This is error. If there be authority in law, in case of a receivership, for the appointment of an attorney to represent absent creditors, as to which no opinion is expressed, the law is clear that his compensation is a charge on the sums coming to such creditors and not on the mass of the creditors. 39 La. Ann. 591; Andrus vs. Creditors, 46 La. Ann. 1355.

Of the $5,277.05 which the receiver places on his account as the only sum he has for distribution, it was proposed to absorb all of it save $1,275.05 in payment of notaries', appraiser's, attorney's fees and receiver's fees, leaving not a cent for ordinary creditors and only the $1,275.05 for a credito of as high rank as the lessor on his rent claim for $4,496.18.

And this is the net result of this receivership and of the administration of the receiver!

The trial judge properly sustained the claims of the State and the City of New Orleans for taxes due, with penalties, etc., and properly ranked these claims as first privileges on the funds in the hands of the receiver.

The lessor was properly allowed the sum of $4,496.18 due him for rent, with interest, and according him a lien and privilege therefor upon the proceeds of the goods in the leased premises, but there was error in subordinating his claim to that of certain general law charges.

Of the $5,277.05 in the hands of the receiver, $1,519.00 was derived from the sale of property and assets not in the leased premises. To this sum of $1,519.00 the lessor's privilege does not attach. On the remainder it does attach, and it also attaches to whatever further sum derived from the sale of the goods in the leased premises the receiver may be accountable for.

The $1,519.00, being a sum which owes no special privilege, must be

first used in paying the claims which are entitled to rank as general privileges ahead of the lessor's claim. C. C. 3254 *et seq.*

Those claims are the taxes due the State and City of New Orleans, the license due the city, together with the penalties attaching to said taxes and license, the amounts due the notary and the appraisers, the auctioneer's fees, cost of advertisement of the property in the leased premises for sale and the clerks and sheriff's costs.

Of the $827.70 which we hold is the amount that should be allowed the receiver's attorney as compensation, $250.00 may well be considered as for " services necessary in order to put the court's action in motion" (as was said in Salaun vs. Creditors, 106 La. 220) leading up to the sale of the property located in the leased premises. For this $250.00 a privilege is recognized as priming that of the lessor. This on the authority of Salaun vs. Creditors.

The same is true of the amount ($1,000.00) which we hold should be allowed the receiver as compensation for his services. $250.00 of the same is recognized as entitled to a preference over the lessor's claim for the reasons set forth in Salaun vs. Creditors and on the authority of that case.

But both these amounts, to-wit:—that portion of the fee due the attorney and that portion of the compensation due the receiver thus recognized as priming the lessor, are to be paid out of the $1,519.00 (the fund owing no special privilege) as far as the same will go towards its satisfaction and the satisfaction of the other charges and costs that are recognized as priming the lessor. Only for the balance that may be left over after exhausting the said sum of $1,519.00, are these claims to be allowed by preference over the lessor on the proceeds of the property which was contained in the leased premises.

The lease having stipulated that in event of suit to collect the rent, attorney's fees should be due the attorney of the lessor, such attorney's fees must be paid, and they are privileged as part of the rent claim.

It does not appear that Koppel, the first receiver appointed, has ever accounted to Kaiser, the second receiver, for his gestion of this estate.

On the contrary, there is that in the record which leads to the belief he has not settled and is due something to the estate. Yet the present receiver, Kaiser, has permitted his bond to be canceled.

He should be proceeded against for a settlement, and if it be found he owes the estate, the amount should be collected and accounted for by the recveiver.

There is nothing in the record to show that the subscriptions made by Weill, Koppel and Taylor to the capital stock of this concern were ever paid, and nothing to show that any effort to collect same, or whatever balance due thereon, was made by the receiver. Yet the record does disclose those parties subscribed to $32,000.00 of stock, and from the face of the record the probability appears very strong that they did not pay the same. If unpaid, these subscriptions are assets of the estate and the receiver should proceed to collect same for the benefit of the creditors. Belknap, Receiver, vs. Adams & Rice, 49 La. Ann. 1352-3; 103 U. S. 508; 133 U. S. 30; 91 U. S. 47.

Where it appears on the face of the record that assets of the estate are not accounted for in what is presented as a final account, the judgment will be reversed and the case remanded, and this, too, notwithstanding failure to specially mention and complain of, in the oppositions filed, this omission of assets. And this court will not go through voluminous records and books, brought up in the original by consent of counsel, to eke out the showing or want of showing made in this respect by the final account.

That provision of law (Sec. 8 of Act 159 of 1898) which requires the clerk of court in receivership cases to keep a book, known as the Receivership Order Book, and to enter therein all proposed orders, and which prescribes that no order shall be granted until ten days after entry of notice thereof in the book, does not have the effect of precluding creditors from contesting claims against the estate which may have been made the subject of such orders so entered, and as to which no opposition was made within ten days of such entry on the order book.

It was not intended by this provision of law to do away with the necessity for provoking the filing of an account by creditors who demand payment. A rule to show cause why he should not be paid should be taken by a creditor after he has provoked the filing of an account, and after its homologation, and this necessity for provoking an account is not to be superseded by a mere application to be paid, in advance of the filing of an account, entered upon the order book.

Creditors are not precluded in the matter of contesting claims set up against an estate except in the way the law provides, to-wit:—by the filing of an account and its homologation contradictorily with them after the notices and delays required to be given.

This case presents a conspicuous example of the swallowing up—if

the courts were to permit it—of an insolvent estate by expenses, charges and costs incident to its administration. This receivership was not conceived or begotten in the interest of the creditors of the corporation, and it seems clear that the purpose of its administration was not to further their interests and did not have that result.

And yet the only excuse for its existence was that the property of the concern might be conserved and applied to the claims of creditors!

The expenses and charges of administration by a receiver should be in proportion to the interests involved and results achieved, always remembering that the property administered is the common pledge of the creditors, and that to realize the payment of their claims, as far as possible in the order in which the statutes provide, is the first and paramount object of the law. It is this result that is to be aimed at, and this court will sternly enforce it in every case coming before it.

It is ordered and decreed that the judgment appealed from be avoided and reversed. and that this case be remanded to the court *a qua* to be procceded with as herein indicated, and with instructions that the account of the receiver be recast in accordance with the views herein set forth and the law, costs of this appeal to be paid by the receiver individually.

MONROE, J. I respectfully dissent.

Rehearing refused.