———o———

No. 6847.

## GLEN FLEMING, ETC., v. F. V. SIERRA.

### Syllabus.

When no term is fixed for the performance of an obligation, it may be enforced at the will of the obligee.

A receiver may demand from delinquent subscribers of stock not only an amount necessary to pay the corpor-

ation debts but also the total amount of subscription needful to equalize the losses among the stockholders.

Sec. 13 of Act 267 of 1914 does not apply to cases of insolvency and bankruptcy.

The receipt of a sum of money in part payment of a subscription to stock is an acceptance of the subscription.

A subscription for stock creates the obligation to pay it, and the benefits expected from it form the consideration; no action of the directors can relieve the subscriber from this obligation as far as the creditors are concerned.

Appeal from the Civil District Court, Parish of Orleans, No. 114,245, Division "A"; Honorable T. C. W. Ellis, Judge. Affirmed.

Dinkelspiel, Hart & Davey, for plaintiff and appellee.

Titche & Rogers, for defendant and appellant.

His Honor, CHARLES F. CLAIBORNE, rendered the opinion and decree of the Court, as follows:

Glen Fleming, describing himself as "Receiver of the Southern States Fair Pan American Exposition Companay,, as per letters issued to him in the matter entitled New Orleans Land Company v. Southern States Pan American Exposition Company", sues the defendant for $160 balance due upon the following document:

"New Orleans, La., Sept, 25, 1913.

"I hereby subscribe for eight shares of stock at the par value of $25.00 each, in the Southern States Fair Pan American Exposition, and agree to pay this subscription as follows: $40.00 1st payment 15th day of October, 1913, and the balance in four

169

notes of equal amounts, payable in three, six, nine and twelve months from date.

(Name) "F. V. SIERRA."

A line was run through the last word "date."

The plaintiff alleges that the defendant has paid $40.00 and remains owing $160.00; that the Southern States Fair Pan American Exposition Company is hopelessly insolvent, as is shown by the account filed by him as receiver, and made part of his petition; that in order to pay the debts of said Exposition Company it becomes necessary to collect all the outstanding claims of the company, including those due from unpaid subscriptions to the capital stock of the company, all of which, if collected, would still leave the company insolvent.

Defendant filed a number of exceptions which were overruled. He then filed an answer. After a trial on the merits, judgment was rendered against him, and he has appealed.

We will take up the exceptions in their order:

1st. "That upon the face of the papers the plaintiff's demand is premature, and is too vague, general, and indefinite."

This suit was filed on November 4, 1915, more than twelve months after the date of defendant's subscription. His obligation was to pay the $160.00 "in four notes of equal amounts payable in three, six, nine, and twelve months from ———." It is evident that the failure of defendant to fix a date certain from which the three, six, nine and twelve months were to run to determine the maturity of the notes he was to furnish, or his obligation to pay, did not render his subscription non-enforceable at any time or of no avail. His subscription remains; and in

170

the absence of evidence to the contrary, the Court will determine the period of maturity from ordinary rules of law.

> "When no date is expressed in a bill or note, it dates from the day when it was made or issued or from delivery." 8. C. J., p. 105, 190; p. 589; p. 184; p. 314, note 26 (a).

If we assume that no certain time for payment is expressed, then it is payable on demand, under the Negotiable Instrument Act of 1914, No. 64, Sec. 7, p. 149:

> Sec. 7. "An instrument is payable on demand * * * in which no time for payment is expressed." *Brannan's Neg. Inst.*, p. 10.
>
> C. C., 2050 (2045): "When no term is fixed by the parties for the performance of the obligation, it may be executed immediately, unless from the nature of the act, a term, either certain or uncertain, must be implied. Thus, an obligation to pay money, without any stipulation for time, may be enforced at the will of the obligee."

The account filed by the receiver gave the defendant full details as to the assets and liabilities of the company, and it was not necessary that the plaintiff should have repeated them in his petition. 9 *An.*, 267.

> 2. "That the plaintiff has mistaken his remedy and cannot proceed in the manner and form herein attempted."

In the case of *Jackson Fire Co. v. Walle*, 105 *La.*, 89, the Supreme Court decided that the liquidating commissioner of an insolvent corporation, no longer a going concern, had a right to demand from delinquent subscribers of stock not only an amount "necessary to pay the corporation

debts and costs and expenses of the liquidation of the corporation", but also the total amount of subscription

> "so that it will include as well all amounts needful for equalizing the losses among the stockholders * * * If there should remain a balance after the payment of the debts and the equalizing of the losses among the stockholders, it can be returned to the one entitled to it." See also 11 *Ct. of App.*, 3.

But the defendant contends that since this decision was rendered the corporation act, No. 267 of 1914, p. 521, was passed. Section 13 of the act reads as follows:

> "That except in case of insolvency or bankruptcy proceedings, and except as provided in Section 9 of this Act, no action to recover an unpaid balance of stock subscription shall be brought against any stockholder until judgment has been recovered against the corporation and an execution returned unsatisfied in whole or in part."

It is evident that this Act applies to suits that might be brought by the directors of a going corporation.

It excepts from its provisions cases of insolvency or bankruptcy proceedings, and requires as a condition precedent to the right to sue an execution returned unsatisfied, when no execution can issue against a corporation in the hands of a receiver.

3. The third and fourth exceptions are that plaintiff has no standing in Court to prosecute this action, and that his petition discloses no cause of action.

The defendant argues that there is no allegation that his subscription was accepted. The petition contains allegations, however, that the plaintiff paid $40 on account of his subscription. The receipt of this sum was an acceptance of the subscription. In *Citizens Bank v. Ferry*, 32

*An.,* 310, the Supreme Court decided that the receipt of notes by the mortgage creditor and the suit filed by him constituted an acceptance of the mortgage.

Our conclusions on the first and second exceptions are a sufficient answer to the other contentions.

5. Defendant further pleads as *res judicata* the judgment rendered in his favor in the suit of *Glen Fleming, Receiver,* against him, *No.* 111,623. We have no doubt that such a judgment was rendered. But we are not made aware of the issues presented in that case, nor of what was decided, as the record is not in the transcript.

The plea that the defendant subscribed to an "Exposition" and that, inasmuch as the Exposition was abandoned and none ever held their contract was without consideration, might be entitled to consideration in a suit by the directors of the Exposition Company for the benefit of the Company; but this is a suit by the representative of the creditors who dealt with the Company on the faith of defendant's subscription and who have a right to demanad the payment of it. *Morawetz on Corporations, 2nd Edition, Sec.* 151.

In the case of *Cucullu v. Union Ins. Co.,* 2 *Rob.,* 571, the Court said on pp. 576, 577:

> "The subscribing for the stock created the obligation to pay, and the benefits expected from it formed the consideration for the notes   *   *   *.   The stockholders cannot release themselves at pleasure by saying that they never complied with their contract; nor can they evade the payment by special pleading when the creditors of the corporation call them in a legal manner.   *   *   *   A person who, with others, signs an agreement or promise to take stock in an incorporated company, thereby promises to pay the corporation the sum necessary

to cover every share set opposite his name, and an action will lie to recover it. This point has been repeatedly decided both in England and the United States, and rests upon the plainest principles of law and justice." .

"This action may be maintained for the purpose of getting the stock to carry on the business, or to execute the purposes for which the corporation was created, and also to pay the debts it may contract." 6*An.*, 459, 7 *An.*, 114; 9 *An.*, 267, 341; 108 *La.*, 259. See also 10 *R.*, 440; 11 *R.*, 253; 8 *An.*, 132; 23 *An.*, 732; 24 *An.*, 404; 46 *An.*, 1074. For consideration see *Morawitz on Corporations, 2nd Edition, Sec.* 133; 101 *U. S.*, 211; 1 *Cook on Corporations, Section* 72.

In *Belknap v. Adams*, 49 *An.*, 1350, the Court said, on page 1352:

"The liability of the shareholder to pay for the shares is deemed contracted in the interest of all who may become creditors of the corporation \* \* \*. The liability of shareholders to the corporation for their stock is treated as a trust fund for creditors and the Courts will enforce the trust, through the receiver, or other appropriate method." 2 *Morawitz*, 819, 820.

In *City Item v. Phoenix Furniture Co.*, 108 *La.*, 258, the Court said, on page 266:

"If unpaid, these subscriptions (to stock) are assets of the estate and the receiver should proceed to collect same for the benefit of the creditors."

See also 91 *U. S.*, 56, *Sawyer v. Upton Co. of Morgan v. Allen*, 103 *U. S.*, 508; *Cook on Corp., 6th Ed., Sec.* 199.

"By Article 266 of the Constitution the shares of stock of a corporation issued without value received

by the corporation are null; but the persons to whom the stock is thus issued cannot invoke such nullity for escaping liability to the creditors of the corporation for the face value of the stock. They are estopped. *Dilzelle v. Lehman*, 120 *La.*, 274 (284) 873."

*Morse on Banks, 2nd Ed., p.* 488, says:

"The shifts to which shareholders who have only paid a portion of the par value of their shares have resorted, in order to avoid further payments after the corporation has proved unsuccessful, are very numerous. But they have uniformly met with well deserved failure, at least so long as *bona fide* debts of the bank were outstanding."

> *Morawetz on Corporations, Sec.* 780, *Sec.* 781.

## ON THE MERITS.

The defendant admitted that he had subscribed for eight shares and that he had paid $40.00 on account, as alleged in the petition, but denied his indebtedness for $160; he further averred that in order to induce him and others to subscribe, the Exposition Company had obtained from a number of persons a written guarantee that if the Exposition should not take place that those who subscribed to its stock would be held harmless and not compelled to pay; that the Exposition was not given and therefore the guarantors became liable and it was the duty of the receiver to proceed against them and to apply any sum recovered from them to the credit of the subscribers of stock.

There are two answers to this defense. The first is that the above guaranty can only be considered as an additional asset of the corporation, and that the receiver is not under

175

any obligation to recover upon it as a condition precedent to suing the subscribers.

The second is that no action of the directors can affect or diminish the liability of subscribers to stock as far as the creditors of the corporation are concerned.

In 10 *R.*, 440, quoted above, it was said:

> "The Company could not by any acts of theirs to the prejudice of their creditors, liberate any of its stockholders from their obligations to pay the full price of the shares subscribed for by them." 11 *R.*, 252; 23 *An.*, 732; 24 *An.*, 404; *Morawetz, Sec.* 109, *Sec.* 841; 16 *Wall*, 390.

The defendant further pleads that practically the entire indebtedness of the Exposition Company was incurred on account of its purchase from the New Orleans Land Company of a tract of land; that the directors of the two companies were practically the same; that the New Orleans Land Company was thus enabled to sell to the Exposition Company the tract of land at an exorbitant and ruinous price, and that the Exposition Company gave a confession of judgment to the New Orleans Land Company for a large sum of money, being practically the entire price of said land; that thereupon the New Orleans Land Company caused the land to be sold and became the purchaser for $16,000, or about one-eighth of the original price; and in this manner the Land Company has resumed ownership of the land and remains creditor for the greater part of the price; that the receiver, instead of pursuing the shareholders to compel them to carry out an unfair bargain, should proceed to rescind the unconscionable sale.

We do not perceive that the above statement, even if true, would constitute a defense to this action. There is no law of this State prohibiting dealings between corpora-

176

tions whose board of directors is composed partly of the same individuals, or, as it is called, the interlocking of directors. Their action is not necessarily void. *Morawetz, Se.c* 520, *Sec.* 530. The validity of their action cannot be tested collaterally in a suit to compel the payment of subscriptions to stock.

Nor is there any law authorizing an action on the bare allegation of a purchaser that he paid an "unconscionable" price for a thing.

If, at a judicial sale; the vendor buys back for a nominal price the property sold by him on credit, it is his good fortune and the purchasers' misfortune, but no cause to invalidate the sale when no irregularities are alleged.

It is, therefore, ordered that the judgment be affirmed.

Opinion and decree, March 19th, 1917.

Rehearing refused, April 16th, 1917.

Writ denied, June 13th, 1917.