## No. 716.

SUCCESSION OF JOHN M. HARRIS. OPPOSITION OF J. F. PARGOUD.

29 743
51 1307

29 743
124 758

An administrator who sells succession property, without an order of court, for less than its appraised value, is responsible for the difference.

An administrator is liable for any loss of, or damage to succession property, caused by the fault of his agent, or by any want of prudent administration.

Public administrators are authorized to employ lawyers in behalf of the successions they administer.

In a small succession, five per cent on the amount of the inventory is a reasonable allowance for attorney's fees.

Until it be shown that there are absent heirs, not represented, no attorney should be appointed to represent them.

The fees of attorneys for absent heirs, unless their services are proved to have been valuable to the *succession*, must be paid out of the shares of the heirs they represent.

The charges of notaries, and other officials, in succession matters, are fixed by law, and must be rigidly adhered to.

APPEAL from the Parish Court, parish of Ouachita. *Slack*, J.

*W. W. Farmer* and *Robert J. Caldwell*, for administrator and appellant.

*Cobb & Gunby*, for opponent.

The opinion of the court was delivered by

EGAN, J. James S. Ray, public administrator of Ouachita, was appointed, by virtue of his office, dative testamenty executor of the will of the decedent in January, 1874, J. F. Pargoud, the executor named in the will, having refused to accept.

The dative executor provoked the sale of both real and personal property and filed the account, the items of which are opposed generally and specially by Pargoud as a creditor of the succession. The accountant excepted that he was not a creditor and not entitled to oppose. A tableau of debts in the record shows a large accepted claim in his favor, which had been transferred to Meyer as collateral security for a debt of smaller amount due him by Pargoud, which was subsequently paid. Three thousand dollars of the Pargoud debt was used by Meyer in paying for real estate of the Harris succession purchased by him, and the remainder is still due and belongs to Pargaud as shown by the evidence.

It is the fact and not the amount of indebtedness to him which gives him the right to oppose. It is therefore immaterial to inquire further or to prove specific amount. The exception was properly overruled.

We shall consider the opposition in the same order as the parish judge.

First—That the accountant has credited himself with the difference between the proceeds of sale of property and the amount of inventory

improperly for several reasons:  First—That he has not accounted for
a mule, Julie, appraised at $175.  This is admitted, but it is claimed
that this mule was bid off at the sale, and the purchaser not complying
with the terms of sale, the mule was subsequently sold privately by the
executor for $110 cash, instead of on a credit of twelve months as or-
dered by the court.  The accountant has failed to show at what price
the mule was bid off, or that its real value was less than the appraise-
ment, and, if so, how much less.  He was therefore properly charged
with the appraised price, $175.

The next item charged to be improperly credited and not accounted
for is nineteen hundred pounds of meat.  The quantity inventoried was
twenty-five hundred pounds and that sold only six hundred pounds.
The parish judge allowed the executor a credit of 280 pounds of meat
consumed by the colored family of deceased, according to the best esti-
mate of the witnesses.  This allowance is not complained of by the op-
ponent, and we think was proper.  The executor was, however, charged
with the difference between 880 pounds, the quantity sold and thus used,
and that inventoried, making 1620 pounds, at ten cents, equal to $162.
Of this the executor complains on the ground that he has shown by
witnesses that something over five hundred pounds was stolen from the
smoke-house at night in the absence of Hanna, a keeper appointed and
paid by him to care for the property; and for the further reason that
the meat was not weighed, but only estimated at the time of the inven-
tory.  With regard to the latter reason, it may be remarked that the
mode of estimation adopted is a not uncommon one where, as in this
instance, the meat was hanging on sticks; that is, the quantity on one
stick was weighed, and then the number of sticks and of pieces upon
each counted and the total quantity thus calculated.  This may not
have been exactly accurate, but was, no doubt, approximately so.  At
all events, at this distance of time, we have no better guide, and if there
is any uncertainty it is attributable to the executor, who provoked the
inventory and permitted it to be taken in this manner.  It was his duty
to have had an accurate inventory, and if he did not do so he can claim
no advantage of that fact now.  There may, however, have been some
shrinkage or loss in weight in the short time between inventory and sale,
and we will reduce this item of charge against accountant to five hun-
dred pounds, at ten cents, equal to one hundred and fifty dollars on that
account.  We do not think that the executor is entitled to the credit for
the meat shown to have been stolen.  His keeper boarded and slept two
or three miles from the place, and, as properly remarked by the parish
judge, his presence and care were more needed at night than at any
other time.  No prudent man would have left his own property exposed
to such risk, and the executor must be held responsible for the fault or

neglect of his servant, the keeper, appointed by him, and whose keepership appears to have been of little if any service to the succession.

The next item was corn inventoried and not accounted for. The evidence in regard to this is not very satisfactory, but taken in connection with the inventory might have justified some charge against the executor on this account; as it renders it probable that some part of the corn was stolen, and it certainly was left as liable to be stolen as the meat. It is shown, however, to have been in great part inferior to that which was on the top when inventoried, and was not so accurately measured or estimated. We think the parish judge was liberal in not charging any thing to the executor on this account, but as the evidence does not enable us to ascertain with how much he should be charged we shall not disturb the judgment in this respect.

The next item of $25 35 money embraced in the inventory, not charged in the account, is admitted to be correctly charged in the judgment of the parish court.

The matter of two or three barrels of spoiled meat was properly not charged against the executor.

The item of twenty dollars for a rifle gun stolen was properly charged for the same reason as the meat; i. e., the fault of the keeper.

The next item opposed is the attorney's fees in the succession, charged at $581 62, or ten per cent on the amount of the inventory. It is objected that this is not only excessive, but that the public administrator is a public officer with a compensation fixed by law at double that allowed ordinary administrators, and that he is presumed to have been appointed by reason of his qualification to discharge the duties in person without the aid of an attorney, and if he requires one that he must himself pay for it as was no doubt contemplated by the Legislature in allowing so large fees of office. In view of the history of this and other recent legislation in Louisiana, and of the class of persons usually chosen to act as public administrators, and of the fact that no special qualifications were required by the law, it would be a violent presumption that any such economic or prudent considerations entered into the legislative mind. This was properly characterized in argument as only one of the many more than useless officers with which our people have been burdened in the recent past, but for the future happily no longer under the new order of things. Nevertheless, the office was created by statute of the body acting as a Legislature. No man could properly or safely perform its duties without the aid of an attorney, and the law itself permitted the judge of probates to allow, besides the regular commissions, other reasonable and proper expenses. We think attorney's fees was one, and that the parish judge properly allowed the amount of five per cent on the inventory, or one half of that charged

in the account, which, considering the size of the estate and the value of the services required for its proper management, we consider a usual and proper allowance. The attorney may be entitled to more and even to the full amount charged as against the executor personally for services rendered for his protection. The amount allowed is, however, all that the succession should pay. In this connection we will say that the whole amount of twenty-five dollars, charged as a fee for attorney of absent heirs, should have been disallowed instead of being reduced to ten dollars as was done by the parish judge. The appointment of an attorney for absent heirs in this case was not only unnecessary, but was an abuse and a burden improperly sought to be imposed upon the estate. There is no evidence of the existence of any absent heirs, but on the contrary the instituted heirs resided in the State and parish, and the executor claimed and was allowed credit for amounts expended for the benefit of the family of the deceased, who resided in the place where he died. The appointment of attorney for absent heirs is not authorized without proof of the fact which renders it proper. 12 L. 73. It is proper only when the heirs or part of them are absent from and unrepresented in the State. 15 L. 527. When no absent heirs are shown to exist the appointment of an attorney to them will be revoked as illegal. 3 An. 226. We have felt it proper to announce the law on this subject because this has been a fruitful source of illegal charge upon estates in Louisiana, and the sooner it ceases to be the better.

It may not be amiss to remark that the fee of attorney for absent heirs, when such appointment is necessary, is properly chargeable to the portions of the absent heirs and not to the body of the succession; where, however, the services of that officer *have proved valuable to the succession and for that reason* a fee has been sometimes allowed the attorney for absent heirs out of the succession funds generally. The law, however, does not contemplate this, and it is exceptional.

The executor credits himself with $178 50 as having been paid to his brother-in-law, Hanna, as keeper. This was properly disallowed by the parish judge. The evidence of Hanna himself proves that no such amount was paid him, and it is also apparent that the succession was not benefited by such keepership as it received at his hands. To allow it would be to give a bonus for neglect and carelessness. The executor seems to have put himself to but little trouble personally about this succession. When he did do so he has charged for it liberally outside of his commissions, in the item of $46 50 for expenses. We will allow him ten dollars on this item as a compensation to hands for assisting in collecting and delivering personal property sold. The parish judge rejected the whole of this item, and except as to the sum named, to wit: ten dollars, we affirm his judgment in this respect.

We do not think that a stranger to a succession who assumes its administration for profit is entitled to charge against it the small amounts expended for buggy-hire and ferriage in attending to the ordinary duties of the office he has assumed.

There are two other minor items which have attracted our attention in examining the record, and which were overlooked by the parish judge. The first is the account of J. J. Butler, J. P., for affixing the seals to the effects of decedent, the sole service rendered by him, and whose account includes horse-hire, per diem, and mileage to the residence and then to Monroe to return the *procès verbal* and the sum of six dollars for affixing the seals. We know of no warrant of law for the payment of such an account by the executor, and there appears to have been nothing in the small succession of an illiterate man to make the affixing of the seals indispensable. The law fixes the charge for this duty at two dollars, and we allow this amount. If the officer chose to amuse himself by riding to Monroe to return the *procès verbal,* he could not charge the succession with it.

The second of the items is an account for thirty dollars paid the recorder for raising the seals and taking inventory. By the latest fee-bill. no allowance is made for removing the seals, but by the Revised Statutes of 1870 the sum of one dollar is allowed for that service and for writing the *procès verbal,* and this amount we will allow instead of four dollars as charged in the account. The law makes no provision for the payment of buggy-hire and ferriage, for which six dollars is charged in the notary's account, and we can make none. The law allows fifty cents per · hour, not exceeding twelve hours per day, for taking inventories out of the notary's office and twenty-five cents per hundred words for the *procès verbal,* with twenty-five cents for the seal and certificate thereon, and twenty-five cents for swearing each appraiser. The time consumed necessarily in taking this inventory could not have exceeded one day, which would be six dollars; swearing two appraisers and seal and certificate seventy-five cents; there are not so many, but we will allow eight hundred words for the *procès verbal* of inventory, which would be one dollar and sixty cents more; making a total of eight dollars and thirty-five cents, or say nine dollars, for inventory, to which add one dollar for raising seals, the cost fixed by law, making a total of ten dollars, which we allow on this item of credit claimed by the executor instead of thirty dollars as charged by him. A charge of a round sum in a notary's account for taking inventory is illegal and should be disallowed by the court. 12 L. 73. It may be said and doubtless will be that this amount is too small, and that the services of officers can not be procured at these rates. To this it may be answered that the law has so fixed them and has made it penal to receive any other or higher rates or charges for such services,

and that the Legislature, though often applied to, has as often refused. to increase them. It is not for us to do so, and it may be that our no-- tions have been heretofore too extravagant and officers too exacting.. Perhaps, if the effort is made, officers may be able to live here as else- where upon the fees allowed them by law.

Unlawful and extravagant charges and expenses in all the details of the management of successions have grown to be an abuse and a re- proach in Louisiana. We think it is time that the courts should put a. stop to this state of things, so far at least as the law permits, and that. the attention of inferior tribunals should be called to this matter, which was always burdensome and unjust, and is especially so now in the im- poverished condition of the State and people.

In regard to these particular services the facility with which the ap- pointment of notaries may be procured in every neighborhood would largely diminish any fancied inconvenience resulting from a reduction of fees to the legal standard.

The only remaining matter to be considered on this opposition is the commissions claimed by the public administrator as dative testamentary executor, which were disallowed by the court. There is much in this record of careless administration and consequent loss to the succession to justify the judgment of the parish court in this respect, and we are not prepared to say that on the evidence before us we should disturb it if this were a final account.

We can not pass without rebuke the fact that the administrator has charged, at least in one instance, an amount shown by his own witness and brother-in-law not to have been paid by him; the fact which ap- pears in the record, and though not directly connected with any other item of the present account than the allowance of commissions to the executor—which can not, escape remark—that he discounted for cash shortly before maturity paper taken at the sale of succession property, and has shown no order of court or *other excuse or necessity for doing so;* the fact that after an order of court to sell on twelve-months time he sold for cash for \$110, at private sale, a mule appraised at \$175, and has not shown any sufficient reason for not selling this as other prop- erty on time according to the order of the judge, in which way it is to be presumed it would have brought much more, and has also not shown that the mule sold for its full value, although for less than the appraise- ment. These things were certainly not the acts of a prudent man or faithful administrator; and, indeed, the record discloses such manner of dealing with the succession as might well justify the judgment of the court below in rejecting the executor's commissions absolutely. As, however, there is another reason why he would not now be entitled to charge full commissions, that is that the administration is unfinished,

,even if he shall ever be entitled to them, and as we do not wish to do this officer any injustice we will amend the judgment as to this item so as to make it one of nonsuit only. The executor may thus be afforded an opportunity to show some better reason than is disclosed in this record why he shall be entitled to charge in his own favor commissions for administration in the final account which he has been ordered to file.

For the reasons assigned, it is therefore ordered, adjudged, and decreed that the judgment of the parish court be amended so as to conform to the views expressed in this opinion; that there be judgment of nonsuit only as to the item of executor's commissions for administration; that the executor be charged with one hundred and fifty dollars for meat not accounted for instead of one hundred and sixty-two dollars as fixed by the parish court; that the executor be credited with ten dollars on account of the item for expenses of forty-six dollars and fifty cents, which was wholly disallowed by the parish court; that the sum of two dollars be allowed the executor for the account paid J. J. Butler, J. P., for affixing seals instead of twenty-one dollars and thirty cents, as allowed by the parish judge; that the sum of ten dollars be allowed the executor on account paid M. M. Grady, recorder, for raising seals, taking inventory, and swearing appraisers, instead of thirty dollars, as allowed by the parish court; that the item of twenty-five dollars for attorney for absent heirs be altogether rejected instead of being reduced to ten dollars, as was done by the parish court; and that, as thus amended, the judgment of the parish court be in all respects affirmed. It is further ordered that the succession pay the costs of this appeal.