No. 9322.

Orleans Appeal.

---

## LOUIS CAPO v. M. BLANCHE BLANCHARD, ET AL., Appellants.

---

(October 6, 1924, Opinion and Decree.)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest, Surveyors & Surveys, Par. 18.**

Prescription does not run against the action of boundary.

(Civil Code, Art. 825—Editor's Note.)

2. **Louisiana Digest, Prescription, Par. 22, 27.**

It requires thirty years uninterrupted possession to acquire the ownership of lands beyond one's title.

(Civil Code, Arts. 3475, 852 and 3493—Editor's Note.)

3. **Louisiana Digest, Prescription, Par. 20.**

In order to acquire by the prescription of ten years beyond one's title it is necessary to show not only possession of ten years but a possession based on boundaries fixed according to titles by a surveyor in accordance with the for-

malities required by the Code on the subject of fixing boundaries. · Discontinuous servitudes can be acquired neither by prescription nor by destination de père de famille.

(Civil Code, Arts. 823 to 855 and 727, 766—Editor's Note.)

4. **Louisiana Digest, Surveyors & Surveys, Par. 13.**

The error of an owner in agreeing to a boundary neither makes nor divests a title.

5. **Louisiana Digest, Servitude, Par. 11.**

The owner of two lots of ground who builds upon one lot a house that rests partly upon the other lot thereby creates a servitude upon the last lot in favor of the former by a destination de père de famille.

6. **Louisiana Digest, Surveyors & Surveys, Par. 27.**

When a defendant has resisted the fixing of boundaries he owes the whole of the surveyor's cost.

7. **Louisiana Digest, Surveyors & Surveys, Par. 27.**

But those costs are fixed by law and cannot be allowed in the shape of a round sum.

8. **Louisiana Digest, Surveyors & Surveys, Par. 27.**

No sum can be allowed for services connected with the making of the survey or for extra services not provided by the tariff fixed by law.

Appeal from Civil District Court, Hon. Hugh C. Cage, Judge.

This is an action of boundary. Judgment for plaintiff. Defendants appealed.

Judgment amended and affirmed.

Richard B. Otero and C. S. Hebert, attorneys for plaintiff and appellee.

Suthon & Zengel, attorneys for defendants and appellant.

CLAIBORNE, J. This is an action of boundary.

The plaintiff alleges that by act of A. J. Cuneo, Notary, dated December 1, 1920, he purchased from A. Centanni the following property:

A lot with all the buildings, etc., thereon situated at the corner of Iberville and Telemachus, in the square bounded by Bienville and Cortez, measuring 24′ 6″ 1‴, or more, front on Iberville by 91′, or more, deep and front on Telemachus Street; being part of Lot 1 on a sketch dated November 28, 1892 annexed to an act of sale by Albert Paul to L. Bage and measuring 34′ 1″ 1‴ on Iberville by 120′ deep and front on Telemachus; being the same property which had been acquired by Centanni from the succession of Dr. Joseph A. Blanchard on February 20, 1913; and which Dr. Blanchard had purchased from Albert Paul on September 21, 1894.

That the defendant herein, the Misses Blanchard, acquired the adjoining lot towards the lake as heirs of their father, Dr. J. E. Blanchard, who had purchased from Albert Paul by act dated July 17, 1894; that their lot is described as follows:

A portion of ground with the buildings thereon measuring 36′ more or less front on Iberville Street, beginning at a point 25′ 1″ 1‴ from the corner of Telemachus by a depth of 91′ more or less, being composed of Lots 1 and 2 on a sketch dated November, 1892, above mentioned; Lot No. 1 measuring 34′ 1″ 1‴ front on Iberville Street by 120′ deep and front on Telemachus Street; and Lot No. 2 measuring 27′ front on Iberville Street by 120′ deep; and the portion of ground is composed of 9′ front on Iberville Street of Lot No. 1 and 27′ front on Iberville Street of Lot No. 2, as appears by a sketch annexed to an act of J. D. Taylor dated July 17, 1894;

That no fence was ever erected on the boundary line separating the property of petitioner from that of the Misses Blanchard; that petitioner's property extends twenty inches towards the lake beyond the frame of the building erected upon the lot, but that the defendants claim these twenty

inches as their property; and in the rear of the property from the rear end of his building to the back line, the defendants have erected a shed extending over these twenty inches of petitioner, thus depriving petitioner of a strip of ground measuring twenty inches front on Iberville by 91' deep; that it is necessary that the boundary line be established in order to build a fence, and that the shed be removed from petitioner's property; that petitioner recover rent for the occupancy of his property at the rate of $2.50 per month with interest and all costs, including surveyor's fees.

The defendants filed the following exceptions:

That the plaintiff and the defendants derived their title from a common author, Albert Paul; that upon plaintiff's land he erected a store; that upon defendant's land he erected a building as a residence and the shed in the rear; that he established the side wall of the store nearest Cortez Street as the boundary line between the two properties with a servitude of drip for the overhanging of the roof of the store building, and he incorporated the vacant space of ground between the dwelling and the store as part of the residence; tha these conditions were fixed by Albert Paul prior to 1894 and have existed ever since and constitute a "destination de père de famille"; that the plaintiff is estopped from contesting the conditions and servitudes established by Albert Paul; defendants further pleaded the prescription of ten and thirty years in favor of the servitudes.

By consent, the exceptions were referred to the merits.

For answer the defendants reiterated the allegations of their exception.

There was judgment for the plaintiff as prayed for, but rejecting the prayer for rents, and dividing the surveyor's fee between the plaintiff and defendants one-half each.

The defendants have appealed. The plaintiff has answered the appeal and prayed for rents and for the entire surveyor's cost.

The *locus in quo*, as established by the evidence is as follows:

The building on plaintiff's lot forms the corner of Iberville and Telemachus Streets; the wall of the building towards the lake is of brick and forms the only boundary or division of the two lots on that side for about two-thirds of its depth; there is no fence on the property line of the two lots. At the end of the wall, and in line with it, is a fence extending to the rear of the two lots about 12 or 15 feet. In the rear of defendants' lots is a shed extending over the twenty inches claimed by plaintiff; over the shed is a room. The side of this shed towards Telemachus Street is in line with the lake side wall of the corner building and with the fence, and covers the twenty inches claimed by plaintiff. This corner building and the shed in the rear were both built by Albert Paul, the former owner and comomn author of both lots owned by the plaintiff and by the defendants prior to 1894.

The trial court appointed a surveyor, who made a survey and sketch of the two lots with the improvements thereon on April 11, 1923. He testified that he surveyed the two lots according to the titles of the plaintiff and of the defendants and their author; that his survey agreed absolutely with a prior survey by Brysson Vallas, Civil Engineer, made September 4, 1922; that according to those titles he gave the defendant's lot 36 feet 7 inches, or seven inches more than their title calls for; that he gave plaintiff's lot 24 feet 6 inches and 1 line, exactly what his title calls for; that he located the line of plaintiff's lot 1 foot

2 inches from the wall of his building towards the lake; that these 14 inches strike the eaves of the roof of the building; that a plumb bob dropped from the edge of the eaves falls upon the 14-inch line. There is an iron picket fence in front of the Blanchard property. It terminates with an iron post 14 inches before it reaches the plaintiff's, Capo's, building; it terminates at the property line as fixed by the surveyors; the end of the iron fence, the edge of the eaves, and the wooden stake, are exactly 24 feet 6 inches and 1 line from the correct corner of Telemachus; between Capo's building and the defendants' property there is no fence; the brick wall forms the division; there are two windows in this wall, with blinds originally opening upon the outside; Albert Paul never lived in either property; he rented both; the 14-inch space was used by the defendants as a flower bed; the improvements upon Capo's lot encroached upon the correct line of Telemachus Street 8 inches and 4 lines.

Under this state of facts it is evident that the defendants have no title of any kind, as owners, to those 14 inches. In deed, they admit it in their pleadings and in argument. Their only contention is that they have acquired a right of servitude over those 14 inches by prescription, exactly what precise servitude is not stated. The only question then is, have they acquired such a right by prescription?

The defendants have not occupied the premises during thirty years, therefore the prescription of thirty years cannot avail them. C. C. 852 (848).

What is the servitude claimed by the defendants?

It is that the common author, Albert Paul, dedicated the 14 inches of ground to the used of the dwelling, and that such dedication amounts to a "destination de père de famille", which attaches to, and forms part of the two properties actively and passively.

There is no doubt that the defendants and their author have been in the possession and enjoyment of said 14 inches for more than ten years, but without title thereto.

Can they acquire a servitude of use thereto by ten years?

C. C. Art. 727: "Servitudes are either continuous or discontinuous. Continuous servitudes are those whose use is or may be continual without the act of man. Such are aqueducts, drain, view and the like. Discontinuous servitudes are such as need the act of man to be exercised. Such are the rights of passage, of drawing water, pasture, and the like."

C. C. Art. 728: "Again, servitudes are either visible and apparent or non-apparent. Apparent servitudes are such as are to be perceivable by exterior works; such as a door, a window, an aqueduct. Non-apparent servitudes are such as have no exterior sign of their existence, such, for instance, as the prohibition of buildings on an estate, or of building above a particular height."

C. C. Art. 765: "Continuous and apparent servitudes may be acquired by title or by a possession of ten years."

C. C. Art. 766: "Continuous non-apparent servitudes, and discontinuous servitudes, whether apparent or not, can be established only by title. Immemorial possession itself is not sufficient to acquire them."

So far as the ground adjoining the brick wall is concerned, there were no "exterior works", indicating the servitude. C. C. 728. No one, upon looking upon the 14 inches would have had his attention called to any evidence of servitude by any "exterior sign of its existence". C. C. 728. If it existed at all, it amounted to a mental "prohibition to build", or to interfere with the enjoyment of it by the residence. Unless the flower bed upon the 14-inch strip amounted to such a sign. If it did, then it was a servitude of using that strip as a flower bed and of cultivating it as such. That was a "discontinuous" servitude re-

quiring "the act of man to be exercised' and could not be acquired by prescription. Article 766. Without the flower bed it was a non-apparent servitude; with the flower bed it was a discontinnous servitude, and neither could be acquired by prescription. C. C. 766.

Can the servitude over the same 14 inches be acquired by "destination de père de famille"? The negative answer is found in Art. C. C. 767 (763) in these words:

"The destination made by the owner is equivalent to title with respect to continuous apparent servitudes."

We have already stated that the servitude claimed by the defendants is either discontinnous or non-apparent. Under the text of the Code it cannot be the subject of a "destination de père de famille".

As relates to the 14 inches along the fence in the rear of the brick wall, we do not consider that a fence is indicative of a servitude. It is a boundary line and an evidence of ownership, but not of a servitude. Everyone on seeing a fence would take it to signify the extent of ownership; no one would imagine that a servitude lurked behind it.

But in the case of Woodcock vs. Baldwin, 51 La. Ann. 989, 26 South. 46, th court said:

"In relation to such a servitude, 'destination de père de famille', permanence of destination and the 'caractèrs de perpétuité' are the essential prerequisites of their establishment." Rideau vs. Barnet, 1 La. Ann 408.

In Williams vs. Bernstein, 51 La. Ann 116, 25 South. 411, the court said:

"Neighbors constantly run up fences within or beyond the boundary lines and join their fences, doing so with the knowledge and understanding that such acts are merely temporary and done subsidiarily to and with reference to the right of both to ultimately ascertain and fix rights by an action of boundary or through a formal legal survey."

But assuming that the fence was a boundary it does not meet the requirements of Article C. C. 853 (849) to establish ownership by the prescription of ten years.

It has been decided that in order to support that prescription it is necessary to show not only a possession of ten years, but also that the possession has been held by boundaries fixed according to a common title, and, according to Article C. C. 835 (829), located by a sworn surveyor after pursuing the formalities required by the Articles of the Code on that subject. Gray vs. Couvillon, 12 La. Ann. 730; City of New Orleans vs. Shakespeare, 39 La. Ann. 1033, 3 So. 346; Gaude vs. Williams, 47 La. Ann. 1326; 17 So. 844; Williams vs. Bernstein, 51 La. Ann. 124; 25 So. 411. There is no prescription to an action of boundary. C. C. 825 (821); Francois Arceneaux vs. De Benoit, 21 La. Ann. 673 (678); Heirs of Mason vs. Layton, 38 La. Ann. 679; Williams vs. Bernstein, 51 La. Ann. 124, 25 So. 411; Alexander Latiolais vs. Louis V. Mouton, 23 La. Ann. 529.

The mistake of an owner in agreeing to a boundary neither makes nor divests a title. Adam Frederick vs. Etienne Brulard, 6 La. Ann. 382; Lacour vs. Watson, 12 La. Ann. 215; Gray vs. Couvillon, 12 La. Ann. 732; Riddel vs. Jackson, 14 La. Ann. 135; Gaude vs. Williams, 47 La. Ann. 1326, 17 So 844; Russel vs. Producers' Oil Co., 138 La 193, 70 So. 92.

"It being manifest that error was committed by the defendant and one who preceded plaintiff as owner of the latter's land in locating the lot not adjacent to the railroad, the prescription therefore of ten years does not apply." Gaude vs. Williams, 47 La. Ann. 1326, 17 So. 844.

Although we consider that the judgment of the District Court in favor of plaintiff was correct, we think he erred in locating the boundary line 20 inches from the Capo property. The surveyor's plan and his testimony and all the surounding circumstances place the line at 14 inches.

It is otherwise, however, as to the shed in the rear.

The side of it towards Telemachus Street extends, partly, over the 14 inches claimed by plaintiff. The buildings consist of one room used as a sleeping room or a school room, or a store room. This is the apparent and continuous servitude recognized in Woodcock vs. Baldwin, 51 La. Ann. 989, 26 South. 46, and must be applied in this case so as to recognize the servitude in favor of the property owned by the defendants by which the shed now there shall remain on plaintiff's lot as long as it shall stand thereon, but no longer, and shall terminate whenever said shed shall be removed or cease to stand, or be destroyed, as if said servitude had never been established.

The defendants rely upon Opdennoyer vs. Brown, 155 La. 617, 99 South. 482, No. 7 In that case the court maintained the prescription of thirty years in favor of boundaries shown to have been established for more than thirty years. In the case before us we have endeavored to show that no boundaries of any kind had ever been fixed as to the portion of plaintiffs' lot on the lake side of the main building; and that as to the portion divided by the fence the boundary had not been fixed according to law.

The plea of estoppel is without merit. It is not shown that the plaintiff ever did or said anything upon which the defendants acted or changed their position. Lacour vs. Watson, 12 La. Ann. 215. Rents: We do not believe the plaintiff is entitled to any rents. As long as the defendants occupied the 14 inches, and up to the time of this suit, they were in good faith and owed no rents except from the time of the suit. C. C. 3453 (3416); Fortier vs. Roane, 104 La. 90-95, 28 So. 994.

The value of those 14 inches fixed by plaintiff at $100, and the rental value at $3.00 per month, is fictitious. This is a case to apply the maxim: *De minimis lex non curat.* Costs: We believe, however, that the plaintiff is entitled to the whole of the surveyor's costs. The defendants resisted plaintiff's demand to have their boundaries fixed according to their respective titles and compelled this suit. Hence they should be condemned to pay the whole costs of survey and not only one-half. T. Andrews vs. A. A. H. Knox, 10 La. Ann. 604; Lacour vs. Watson, 12 La. Ann. 214; E. Tircuit vs. E. Pelanne et al., 14 La. Ann. 215; Williams vs. Close, 14 A. 737; Gaude vs. Williams, 47 La. Ann. 1236 (1329), 17 So. 844.

The surveyor's bill is as follows:

Surveying this matter................................$25.00
Researches for same.............................. 17.00
Incidentals ................................................ 3.20
                                                              _____
                                                              $45.20

Act 90 of 1880, p. 116, amending Section 3750 of the Revised Statutes, provides:

"They, surveyors, shall be entitled to demand and receive for their respective services the following fees, to-wit:

"For measuring every lot in a town or other place divided into lots, for every running foot, one cent.

"For every original plat of any such lot, including the record, two dollars and fifty cents.

"For every certified copy of such plat and of the certificate of survey one dollar and fifty cents."

In the case of McCollam vs. Beattie, 9 Rob. 474, decided anterior to 1855, the plaintiff surveyor claimed $1,000. The court allowed him $76.24 in accordance with a surveyor's tariff adopted by an Act of Congress.

The jurisprudence of this State has been constant that notaries could not claim larger fees than those fixed by the legislature.

The case of Roboam, 12 La. 73, is a severe arraignment of public officers who demand greater fees than those allowed by law. The allowance of a round sum is illegal also. Succession of Harris, 29 La. Ann. 747; Succession of Morgan, 124 La.

755-758, 50 So. 703; Succession of Alexander, 130 La. 8-17, 57 So. 534.

In Walton vs. Creditors, 3 Rob. 438, the court reduced the amount claimed by the notary for a meeting of creditors from $354.50 to the sum fixed by the tariff, $65.75.

See also Succession of Caballero, 25 A. 646; Succession of John M. Harris. Opposition of J. F. Pargoud, 29 La. Ann. 743 (747); City Item Co-Op. Printing Co. vs Phoenix Furniture Concern, 108 La. 262; 32 So. 469.

In State vs. R. R., 7 Rob. 198, the court refused to allow compensation "for memoranda made and attested by him for the purpose of preparing the inventory in proper form", or for other services connected with the making of the inventory. or for extra services.

See also Hawford vs. Adler, 12 La. Ann. 241; Succession of Alexander, 130 La. 17 57 So. 534.

The three items must therefore be disallowed as in case of non-suit.

It is therefore ordered that the judgment herein be amended so as to read as follows:

"It is further ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Louis Capo, and against the defendants, May Blanche Blanchard and Mary Edna Blanchard, fixing the boundary line between their respective lots of ground fronting on Iberville Street in the square No. 503 bounded by Iberville, Telemachus, Bienville and Cortez Streets, at a point fourteen inches towards Lake Pontchartrain from the side of the building of Louis Capo, subject to a right of servitude in favor of the adjoining lot owned by the Misses Blanchard upon that portion of said fourteen inches occupied by the shed in the rear of said Blanchard to continue as long as said shed shall stand thereon and no longer and to terminate whenever said shed shall be removed or cease to stand or be destroyed or demolished as if said servitude had never been established;

"It is further ordered that the plaintiff have the right to remove the fence in the rear on this fourteen-inch boundary line fixed by Adloc Orr, according to his survey and sketch filed herein;

"It is further ordered that the defendants pay all the costs of these proceedings, including the surveyor's fees; but that the question of the amount of those fees be remanded to be fixed by the District Court in accordance with the views hereinabove expressed;

"It is further ordered that in all other respects the judgment of the District Court be affirmed."