844 So.2d 100 (2003)
Billi'Jo C. GUIDRY
v.
EAST COAST HOCKEY LEAGUE, INC., et al.
No. 02-1254.
Court of Appeal of Louisiana, Third Circuit.
March 5, 2003.
Rehearing Denied April 23, 2003.
*102 Warren D. Rush, Charles M. Rush, Rush Rush & Calogero, Lafayette, LA, for Plaintiff/Appellant Billi'Jo C. Guidry.
Leslie J. Schiff, Schiff Law Corporation, Opelousas, LA, for Defendants/Appellees Louise White C. De Castro, L. Felippe C. De Castro, & PCI, International Consultants Inc.
Henry C. Perret, Jr., Frank S. Slavich III, Perret Doise, Lafayette, LA, for Defendants/Appellees East Coast Hockey League & Richard Adams.
Charles M. Pisano, Walter C. Thompson, Jr., Barkely & Thompson, New Orleans, LA, for Defendants/Appellees Bob F. Wright & Entertainment Venture Associates L.L.C.
Court composed of SYLVIA R. COOKS, BILLIE COLOMBARO WOODARD, and BILLY HOWARD EZELL, Judges.
WOODARD, Judge.
Ms. Guidry appeals the trial court's grant of exceptions of no right of action and/or no cause of action in the Defendants' favor, as well as the trial court's protective order limiting her discovery. We find that the Defendants did not offer sufficient evidence that conclusively demonstrates that Ms. Guidry has no right of action against them. Furthermore, her petition's allegations, if true, state a cause of action. Based on the evidence in the record, we find that the trial court's grant of these exceptions was premature and that she should be permitted discovery. Therefore, we reverse and remand for further proceedings.

* * * * *
Ms. Billi'Jo Guidry filed suit against East Coast Hockey League (ECHL) and its President, Mr. Rick Adams; Entertainment Venture Associates (EVA) and its coowner, Mr. Bob Wright; and PCI International *103 Consultants, Inc. (PCI) and its owners, Felippe and Louise De Castro.
ECHL is a non-profit corporation that operates a hockey league, consisting of members who play ice hockey against one another. EVA is a co-owner of The Louisiana Ice Gators Hockey Team (IceGators), a member of ECHL. Its membership requires IceGators to observe ECHL's rules and regulations. Ms. Guidry alleges that all Defendants were involved in an elaborate scheme to pay certain IceGators players additional monies, exceeding the salary cap which ECHL established.
Specifically, she contends that Mr. Wright was writing checks to PCI/De Castros to be deposited in a dummy account in Miami, Florida. Subsequently, PCI/DeCastros wired the money to an account it held in Lafayette, Louisiana from which it wrote checks to the players, one of whom picked up the checks at the DeCastros' offices every 2 weeks. Ms. Guidry knows of this alleged scheme because she worked for PCI/DeCastros, and asserts that she, even, typed the envelopes for these checks. PCI/DeCastros fired her in May 2001.
She reported the violations to Mr. Adams, ECHL's President, but no fines were levied. She alleges that, under ECHL's By-Laws and rules and regulations, she is entitled to any fine levied because of her unveiling the scheme and reporting the violations. However, she maintains that no fines resulted because Mr. Adams did nothing to pursue an investigation of the claim since he is Mr. Wright's close, personal friend. Accordingly, she argues that he became a party to the conspiratory scheme by not investigating her allegations.
She also urges that ECHL rules provide escalating fines for each violation and that, based upon the number of fines previously imposed, the next fine assessed would amount to $400,000, of which she is entitled to one-half. She contends that no fine has been levied in this case, only, because of the conspiracy among the Defendants. Therefore, they have, either, violated a contract with her or tortiously interfered with a contract to which she was a party or a third-party beneficiary.
All Defendants filed exceptions of no cause of action. Additionally, all Defendants except for PCI and the DeCastros filed exceptions of no right of action. Before the trial court heard these exceptions, it gave an order regarding discovery in the case. Specifically, it ordered that responses to certain outstanding subpoenas, which Ms. Guidry had issued, be produced in camera and under seal, effectively preventing her from seeing or using them to support her allegations. It also placed limitations on the discovery she sought from PCI, and it issued a protective order that stayed all pending and future discovery, until the exceptions could be heard. Ms. Guidry alleges that the trial court abused its discretion in issuing these discovery orders and that she was prejudiced by being denied access to information that she could have used to defend the exceptions.
After a hearing, the court granted the exceptions of no cause of action and no right of action, emphasizing its finding that Ms. Guidry had no right of action. Ms. Guidry appeals, both, the issuance of the discovery orders and the grant of the Defendants' exceptions. All Appellees answer and request sanctions for a frivolous appeal.
Initially, we must decide whether the trial court was correct in granting the exceptions and, if so, whether it abused its discretion in issuing the discovery orders, in effect, preventing Ms. Guidry from fully defending the exceptions.
*104 While a right of action and a cause of action are similar concepts, each has a very different focus. The inquiry into whether a right of action exists concentrates on whether the plaintiff is the proper party to bring the suit and obtain the remedy, while the inquiry into whether a cause of action exists concerns whether the law provides any remedy for the specific injury that is alleged. Thus, while cause of action answers whether there is a remedy, right of action answers whether the particular plaintiff is the proper party to obtain the remedy. Evidence may be presented on whether a right of action exists. No evidence may be presented to aid in the inquiry of whether a cause of action exists. In the latter, we must presume that the mover's allegations are true.[1]

* * * * *
EXCEPTION OF NO RIGHT OF ACTION
Whether Ms. Guidry has a right of action is a question of law, requiring a de novo review.[2] To affirm the trial court's grant of this exception, we must find that Defendants have established that she has no interest in the subject matter of the suit or no legal capacity to proceed with it.[3]
Since the function of this exception is to terminate the suit, we should deny the exception if we can reasonably "construe the pleadings in a way that enables them to `afford litigants their day in court, to arrive at the truth, and to do substantial justice' .... so as to afford the litigant an opportunity to present his evidence."[4] Notwithstanding, defendants may present evidence to demonstrate that a plaintiff does not have a right of action.[5]
In her original petition, Ms. Guidry asserts that ECHL's By-Laws and rules and other regulations provide for one-half of any fine levied "to be paid to the `whistle-blower' who informs ECHL of a particular league salary cap violation." Her supplemental petition contains a copy of ECHL's By-Laws. We have reviewed them in their entirety and find no such provision as she alleges. In fact, the By-Laws directly contradict this assertion. The By-laws' relevant provision, Rule 9.6 E, states:

Whistleblower Program. In order to encourage the reporting of salary cap violations and other violations of the League Agreements, the President shall have the authority, in the exercise of his sole discretion, to award a portion of any fine levied under the provisions of this Article to any person(s) who provide(s) accurate information which proximately results in a final decision against any Member, employee, or Related Entity for a salary cap violation or other violation of the League Agreements ("Whistleblower"). The President shall use his best efforts to keep the identity of the Whistleblower confidential, but neither the President nor the League shall have any obligation to the Whistleblower to maintain confidentiality.

*105 (1) By the act of submitting information to the President, the Whistleblower understands, acknowledges, and agrees that there is no entitlement as a matter of right to any payment by the League of any portion of any fine subsequently levied by the President against the Member, employee, or Related Entity.
(2) After receipt of the fine by the League, the President will determine what amount, if any, the Whistleblower shall be paid and shall forward the funds to the Whistleblower within a reasonable time. The compensation paid to the Whistleblower shall be disclosed to the Board.
(Emphasis added.)
The trial court relied on these provisions to find that Ms. Guidry has no right of action to pursue any of her claims because these provisions demonstrate that she would not be entitled to any remedy even if all of her allegations were true. We find that this argument more appropriately addresses whether she has a cause of action rather than a right of action. This is because the whistleblower's entitlement or lack of entitlement under the provisions centers around whether the law would afford a remedy instead of whether she is the proper person to pursue the action. Thus, we will address this theory in our "no cause of action" analysis.
Ms. Guidry supports her argument that she has a right of action under the above provision of the By-laws by analogizing it to an offer of a public reward. She asserts that even if, ultimately, she is not entitled to a portion of any fine levied, she became a party or third-party beneficiary of a contract at the moment she reported the information of the salary cap violations. Accordingly, ECHL and its President simultaneously incurred the obligation to act in good faith to execute the contract, which she believes requires ECHL and its president to make a good faith effort to investigate her allegations and, at least, make the determinations of whether to levy a fine and whether to award her a portion of the fine.
While we do not necessarily accept her analogy, we do believe that her analysis is correct. Generally, an outsider of a company has no right to require that the company's By-laws be enforced. Notwithstanding, the By-laws in this case reference "whistleblowers" and, impliedly, created a potential obligation on behalf of the entity. This obligation is directed to "any person" without qualification regarding employee status. Thus, when Ms. Guidry, a former employee of an associated company, reported the alleged salary cap violations, she became the "whistleblower" to which the provision refers. We find that her action of reporting the violations constituted performance under an aleatory contract and transformed the above provisions into such a contract.
"A contract is aleatory when, because of its nature or according to the parties' intent, the performance of either party's obligation, or the extent of performance, depends on an uncertain event."[6] The uncertain event in the instant case is whether a fine is levied. A contract was formed at the moment Ms. Guidry fulfilled the "whistleblower" function. Thus, ECHL and its President acquired a duty to act in good faith at that same moment. In this case, ECHL's and its President's obligation to perform or the extent of its performance in deciding whether to give Ms. Guidry a part of the fine depends on whether a fine is, even, levied. As a party to that contract, Ms. Guidry has a right of action to seek its enforcement. *106 In other words, she has a right to require ECHL to act in good faith. While its obligation is not automatically to pay her any portion of the fine, there is an implied obligation that the President determine what amount, if any, she should receive, and this determination must be made in good faith. We do not see how the President could make this determination in good faith without thoroughly investigating her allegations. Accordingly, the President's actions leading up to his decision of whether to levy a fine must also be taken in good faith. Further, since we have determined that she was a party to a contract with ECHL, we must also recognize that she has a right of action against the additional Defendants, at least, for their alleged tortious interference with that contract.
EXCEPTION OF NO CAUSE OF ACTION
An exception of no cause of action requires us to test the legal sufficiency of Ms. Guidry's pleadings. In other words, considering that she is a proper plaintiff, we must ascertain whether the law provides for any way to remedy the specific injuries she allegedly suffered. In making this determination, we must presume that every allegation in her petition is true.[7]
As we discussed, even though, ultimately, she may not be entitled to any monetary remedy under the law, she is entitled to have ECHL observe, in good faith, its By-laws' provisions which affect her as a "Whistleblower." Performing in good faith under a contract is, indeed, a remedy which the law unequivocally provides to each party of a contract.[8]
Furthermore, Ms. Guidry's petition alleges that ECHL's By-Laws and rules and regulations entitle her to a portion of any levied fee because of her information. However, Defendants did not provide the rules and regulations before the trial court stayed discovery. Thus, we have, only, the By-Laws, not the rules and regulations, to refute her allegations. In its brief, ECHL claims that it has no "rules and regulations." However, the By-Laws require that the Board promulgate:
a set of regulations ("Regulations") including by way [sic] example but not limitation the determination of the League Championship, the conduct and scheduling of ice hockey games among the Members, player contracts, the establishment of a roster of players for each Member, the selling, assigning and trading of player contracts and such other matters as pertain to the general welfare of hockey operations in the League. Each Member agrees to be bound by the Regulations as may be amended from time to time.
(Emphasis added.)
While ECHL admits that it has "Rules which govern the playing of games and separate Regulations which cover interleague play," it asserts that "[n]either addresses the escalating fines claimed by Guidry in her brief." We do not find these assertions, absent copies of the rules and regulations, sufficient to rebut Ms. Guidry's allegations. While there may not be any provisions providing for escalation of the fines based on the number of previous fines, ECHL does not assert that the fines are not addressed at all in the rules and regulations. Indeed, we believe that there must be provisions relating to the salary cap impositions within these rules and regulations, because the By-Laws do not state the salary cap amounts. Thus, we are left to speculate what else the rules *107 and regulations might provide pertaining to the salary cap violations and whistleblower provisions.
While we assume that the rules and regulations, enacted pursuant to the By-Laws, are not inconsistent with them, courts' assumptions are inadequate to support a decision to affirm the trial court's ruling, abrogating any possibility, at this early juncture, for Ms. Guidry to pursue her claims. The "Whistleblower" provisions were added to the By-Laws in August 1998. We cannot be certain whether the idea was entirely new and these provisions were the first to implement the program in any way, or whether, for example, there were more stringent requirements, initially, in the rules and regulations, which the board sought to change in these new By-Laws provisions. Thus, the fact that the By-Laws, standing alone, do not prove Ms. Guidry's assertion, this is insufficient to defeat her claims. In other words, even though ECHL's By-Laws do not entirely support her allegations, in the context of an exception of no cause of action, we must assume that the rules and regulations do, as she has alleged.[9]
Moreover, after reviewing the By-laws, we question the location of the additional provisions regarding salary cap violations. In fact, it appears that they may be contained in each member's "Interleague Agreements" as opposed to the "Rules or Regulations." Nonetheless, in filing these exceptions, it was the Defendants' burden to prove that the rules and other regulations do not say what Ms. Guidry alleged. The document is the best evidence. Ms. Guidry was not required at that early stage of the proceedings to offer any proof to support her allegations.
Assuming that the rules and regulations state what she alleges they dothat a "whistleblower" is entitled to one-half of any fine leviedwe find that she has a right and cause of action, based on, at least, detrimental reliance and/or contract law. At the very least, she is entitled under the law to force ECHL to act in good faith in compliance with its By-Laws which affect her. Furthermore, because a right of action against ECHL creates a right of action against the other Defendants, a cause of action against ECHL creates a cause of action against the other Defendants, as well. If Ms. Guidry's conspiracy theory is true, all of the Defendants have prevented ECHL from acting in good faith under its contract, creating a domino effect, resulting in each Defendant tortiously interfering with her contract with ECHL.
Consequently, we find that the court's decision, granting the exceptions of no cause of action and no right of action, was premature, and we reverse.
PROTECTIVE ORDER/FRIVOLOUS APPEAL
Given our reversal, a discussion of whether the discovery orders prevented Ms. Guidry from fully defending the exceptions is moot, as they were only in effect until the exceptions could be ruled upon. However, we note that discovery statutes must be construed liberally so as to allow the parties to discover the true facts, compelling disclosure of such facts wherever they may be found, and to allow the parties to obtain all facts pertinent to the litigation.[10] Presumably, now, Ms. Guidry's right to full discovery will be permitted.
Obviously, we find no frivolous appeal.

*108 CONCLUSION
We reverse the trial court's ruling, granting the Defendants' exceptions of no right of action and/or no cause of action and remand the case for further proceedings to allow Ms. Guidry her right to full discovery. We assign all costs of this appeal to the Appellees, equally.
REVERSED AND REMANDED.
NOTES
[1] Roger Boc, L.L.C. v. Weigel RTG, Inc., 99-570 (La.App. 3 Cir. 11/3/99); 744 So.2d 731.
[2] Mississippi Land Co. v. S & A Properties II, Inc., 01-1623 (La.App. 3 Cir. 5/8/02); 817 So.2d 1200.
[3] Dugas v. Dugas, 01-669 (La.App. 3 Cir. 12/26/01); 804 So.2d 878, writ denied, 02-0652 (La.5/24/02); 816 So.2d 307.
[4] Goulas v. Denbury Management, Inc., 00-935 pp. 4-5 (La.App. 3 Cir. 12/6/00); 774 So.2d 346, 349; La.Code Civ.P. art. 927(A)(5).
[5] Arcadian Corp. v. Olin Corp., 97-174 (La. App. 3 Cir. 6/18/97); 698 So.2d 9.
[6] La.Civ.Code art.1912.
[7] Roger Boc, L.L.C., 744 So.2d 731.
[8] La.Civ.Code art.1983.
[9] Roger Boc, L.L.C., 744 So.2d 731.
[10] State ex rel. Ieyoub v. Racetrac Petroleum, Inc., 01-0458 (La.App. 3 Cir. 6/20/01); 790 So.2d 673.