STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-180 consolidated with 06-181


DAVIS GULF COAST, INC.

VERSUS

ANDERSON EXPLORATION CO., INC., THREE SISTERS TRUST AND
AUSTRAL OIL & EXPLORATION, INC.

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT,
PARISH OF ST. LANDRY, NO. 02-C-2585-D
HONORABLE DONALD W. HEBERT, DISTRICT JUDGE


**********

**J. DAVID PAINTER**
**JUDGE**
**********

Court composed of Oswald A. Decuir, Glenn B. Gremillion, and J. David Painter, Judges.


**REVERSED AND RENDERED.**


Robert L. Cabes
S. Joseph Dupuis, Jr.
Matthew A. Lynch
101 La Rue France, Ste. 200
Lafayette, LA  70505-1327
Attorneys for Defendant-Appellant:
     Davis Gulf Coast, Inc.

Steven G. Durio
Robert L. Broussard
P.O. Box 51308
Lafayette, LA  70505-1308
Attorneys for Plaintiff-Appellee:
     Anderson Exploration Co., Inc.
Attorneys for Intervenor-Appellee:
     Ragin Rentals, Inc.

PAINTER, Judge.

Davis Gulf Coast, Inc. ("Davis") appeals the trial court's judgment declaring Anderson Exploration Co., Inc. ("Anderson") to be the owner of a 25% working interest and a 19¼% interest in certain mineral leases as of May 15, 2001. Arguing in the alternative, Davis appeals the trial court's choice of a penalty provision as a result of Anderson default under its Joint Operating Agreement with Davis. We reverse the trial court and render judgment.

FACTS

The parties stipulated to certain facts, which we summarize as follows. On March 1, 2001, Davis, Anderson, Three Sisters Trust ("Three Sisters"), and Austral Oil & Exploration, Inc. ("Austral") agreed to participate in the benefits to be derived from development of certain oil, gas, and mineral leases. They executed a Participation Agreement by which Davis, then owner of the entire working interest in certain mineral leases in the Shuteston Field in St. Landry Parish, Louisiana, agreed to transfer a 25% working interest in the leases each to Anderson and to Three Sisters. Davis was to receive $75,000.00 in consideration from Anderson and Three Sisters. Additionally, Anderson and Three Sisters entered a turnkey drilling agreement with Davis. Under the terms of that agreement, Anderson and Three Sisters agreed to fix a firm estimated cost for drilling a test well. Davis would pay 50% of that estimated cost (which, the parties agree, was $499,313.50). Anderson and Three Sisters were to bear the remainder of the costs, through delivery of the log of the well.

On May 1, 2002, Ragin Rentals, LLC ("Ragin") bought a 5% working interest and a 3.85% net revenue interest from Anderson and Three Sisters. For that interest,

Ragin paid $62,952.00. Of that amount, $7,500.00 represented lease costs. The remainder represented the turnkey price for Ragin's interest. Anderson and Three Sisters also sold interests to others who are not parties to this suit.

Davis paid its costs under the turnkey agreement into an escrow account at Cameron State Bank. Three Sisters and Anderson paid the $75,000.00 required of them by the Participation Agreement in the form of a credit against Davis's payment of costs under the turnkey agreement. Davis never delivered the assignments of a 25% working interest in the leases to either Anderson or Three Sisters.

In the Participation Agreement, Austral was named operator with no other interest in the well. Austral signed contracts and/or entered into agreements of other types with service providers and was later replaced as operator by Anderson.

Operations on the test well (the Grace K. Nunez #1 Well) began on May 3, 2001 and drilling ended on June 30, 2001. On July 2, 2001, Davis authorized Cameron State Bank to release sums from the escrow account to Anderson and Three Sisters. After drilling ended, and after receiving the drilling log, Davis elected to participate in completion of the well. Anderson, by then the operator, billed Davis for half of the completion costs of $181,768.98. Davis did not pay. Davis mortgaged its 25% interest in the leases, i.e. 25% of the Grace K Nunez #1 Well. Several service providers filed liens against the well totaling $678,354.80 as of April 25, 2002. On May 10, 2002, Austral, then operator of the well, put Davis in default and provided a deadline for cure or imposition of the penalty provided in the Joint Operating Agreement.

On May 15, 2002, Davis made demand on Anderson, Three Sisters, and Austral for surrender of operating rights to the well, for an accounting of Davis' funds, and

2

for an assignment of all rights under a gas purchase agreement entered with LIG Chemical Co. Davis applied for a public hearing to remove Anderson as operator of the well and to have itself designated as operator. On June 20, 2002, Davis filed a Petition for Declaratory Judgment and Damages naming Anderson, Three Sisters, and Austral as Defendants. Davis prayed for a judgment declaring that neither Anderson nor Three Sisters was entitled to an interest in the mineral leases or test well or, alternatively, that they were defaulting parties under the Joint Operating Agreement and therefore subject to the penalty provisions. Davis further pleaded that neither Anderson nor Austral had any right to operate the well, had no interest in the mineral leases and that Anderson, Three Sisters, and Austral were all defaulting parties such that Davis was entitled to take over as operator. Davis further prayed for judgment against Anderson and Three Sisters for the amount it escrowed, for damages suffered as a result of their breaches, for an accounting of all costs incurred and revenues derived in connection with the Nunez Well, and for an order to indemnify Davis from liens and other claims for goods and services supplied in connection with the drilling of the well. Ragin intervened in the suit demanding an assignment from Davis and/or Anderson. After negotiations, Davis was named operator of the Grace K. Nunez #1 Well.

The parties agree that letters were exchanged in July 2002 in an attempt to work out the problems between the parties. The effect of those letters is in dispute.

Davis voluntarily dismissed its petition without prejudice, subject to the continuation of the intervention of Ragin. In November 2002, Anderson filed a Petition for Ownership against Davis asking that Davis be ordered to transfer the

3

working interest set out in the Participation Agreement to Anderson. That suit was consolidated with Ragin's intervention.

Davis paid $678,354.80 to clear all the liens on the Nunez Well. According to Anderson, prior to the dispute with Davis, it, along with Three Sisters and Austral, contributed a total of $626,920.78 to the drilling of the well. According to Davis, the well produced net revenue of $3,457,472.00 between September 2003 and April 2005.

At trial, Davis asserted that the letter agreements constituted a novation of the Participation Agreement or a compromise of its pending suit. Therefore, Davis argued that Anderson's interest in the well, if any had been earned, was forfeited by its failure to fulfill the requirements of the letter agreement. Davis further argued that Ragin was not entitled to enforce its assignment from Anderson against Davis because there was no privity of contract between Ragin and Davis. Anderson argued that it had earned the assignment upon payment of the $75,000.00 consideration and that the letter agreements were not a novation. Anderson further asserted that it was also entitled to the assignment owed Three Sisters because Three Sisters and Anderson were solidary obligees. Ragin argued that its assignment from Anderson could be enforced against either Davis or Anderson.

After a trial on the merits, the court rendered judgment and gave written reasons therefor. The court found that Anderson and Three Sisters were not solidary obligees because the Participation Agreement clearly provided for Anderson and Three Sisters "separately, to receive separate assignments of 25% each in the leases." Therefore, the court denied Anderson's claim to recover Three Sisters' assignment. The court further found that the letters of July 2002 were neither a novation nor a compromise but rather constituted only "an agreement to agree, because no formal

4

documents were prepared to finalize any of the previously agreed to terms . . . ." The court found that Anderson earned its 25% working interest "upon execution of the Participation Agreement and upon payment of the $75,000.00 consideration." With regard to penalties, the court stated that "a default resulted from the incurring of liens by Anderson . . . which were to be the financial responsibility of [Anderson] as Operator of the Grace K Nunez #1 Well. This Court finds the amount of the default to be in the amount of $750,000.00 which was incurred in drilling operations." The court further noted that after being notified in writing of its default, Anderson took no steps to timely remedy the default and thus became subject to the penalty provisions of the Joint Operating Agreement.

With regard to Ragin, the court ordered Anderson to deliver the 5% interest contracted for to Ragin.

Davis appeals asserting that the trial court erred in failing to find that the letter agreements were either a novation or a compromise. Davis alternatively contends that, if Anderson did earn an assignment of a 25% working interest in the leases and well, the trial court erred in declaring which penalty section of the Joint Operating Agreement applied to Anderson's default because the election of a penalty was vested in Davis by the Joint Operating Agreement.

DISCUSSION

*Novation*

"Novation is the extinguishment of an existing obligation by the substitution of a new one." La.Civ.Code art. 1879. Novation occurs when the parties agree to substitute a new cause for a pre-existing obligation or a substantially new performance for the one previously owed. If a substantial part of the performance owed is unchanged, no novation occurs. La.Civ.Code art. 1881. "The intention to

5

extinguish the original obligation must be clear and unequivocal. Novation may not be presumed." La.Civ.Code art. 1880. Novation will not occur where there is a modification of an obligation unaccompanied by the intent to extinguish the original obligation. La.Civ.Code art 1881. "The execution of a new writing, the issuance or renewal of a negotiable instrument, or the giving of new securities for the performance of an existing obligation are examples of such a modification." *Id.*

The trial court based its judgment on its interpretation of the letters. This is a legal finding, and the standard of review for legal findings is *de novo*. *Busby v. Cappaert Manufactured Housing, Inc.*, 01-496 (La.App. 3 Cir. 10/3/01), 799 So.2d 608. The testimony adduced at the trial in this regard is inconclusive. However, we need look no further than the four corners of the agreement to determine the intent of the parties. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. Our review of the letters of July 3, 9 and 11, 2002 convinces us that the letters were intended to substitute a new performance for that previously owed and thus constitute a novation.

Davis' letter of July 3, 2002 states, "this letter will serve as a proposed agreement intended to resolve the issues raised in our prior demand letter . . . . this letter will remain open for discussion and acceptance only through 1:00 P.M. on July 15, 2002." The letter was signed "ACCEPTED AND AGREED ON THE DATE SHOWN: ANDERSON EXPLORATION CO., INC." by Charles R. Anderson, President of Anderson, on August 8, 2002, as well as by representatives of Austral and Three Sisters. On July 9, 2002, Charles Anderson responded to the July 2 letter stating "the terms of the letter are conditionally acceptable . . . ." and that "[a] provision for the payment, by Davis Gulf Coast, Inc., of its currently outstanding

6

balance will need to be added to the agreement." On July 11, 2002, a letter was sent by counsel for Davis to Anderson, Three Sisters, and Austral, which states "please consider this as an amendment to the July 3, 2002 letter . . . ." and provides for certain payments by Davis. That letter further states: "If this meets with your understanding of our revised agreement, please execute and return the attached copy of this letter to the undersigned." This letter, too, was signed "ACCEPTED AND AGREED ON THE DATE SHOWN: ANDERSON EXPLORATION CO., INC." by Charles R. Anderson on July 16, 2002, and by representatives of Three Sisters and Austral. The plain language of the letters indicates that they constitute an agreement and were accepted by all parties.

Additionally, a comparison of the Participation Agreement and the letter agreement shows that the letter agreement constitutes a novation in that it provides for a substitute performance and term, including, but not limited to, erasure of liens before September 15, 2002, surrender of Anderson's position as operator to Davis, and accountings. These changes in the parties' obligations are extensive and constitute a novation under the law.

Alternatively, Anderson argues that the letter agreements do not allow for forfeiture of Anderson's interest in the leases or the well. However, the question is not whether Anderson forfeits its interest, but rather, whether it has earned any interest. The terms of the agreement, which we have found to be a novation, substitute a new performance in return for which Anderson may earn its interest in the leases and the well. Paragraph 8 of the July 3, 2002 letter states:

> Subject to the provision of the next succeeding paragraph, if all such liens and privileges are erased of record on or before September 15, 2002, evidence of such furnished to Davis, and Davis is able to independently verify such release, Anderson And Three Sisters shall be

7

deemed to have earned the interest provided for in the Participation Agreement.

Paragraph 10 states in part "At such time as you have earned an assignment pursuant to this agreement . . . ."

It is undisputed that Anderson did not perform its obligations under the letter agreements. Therefore, it did not earn the 25% working interest it now claims.

*Penalties*

Having determined that Anderson is not entitled to an assignment of a 25% working interest, we need not consider Davis's alternative assignment of error regarding election of a penalty for Anderson's failure to discharge its financial obligations under the Joint Operating Agreement. We reverse the trial court's assessment of a penalty against Anderson.

*Claims of Ragin*

The trial court ordered Anderson to turn over a 5% working interest in the Grace K Nunez Well #1 to Ragin. Ragin has not appealed the trial court's denial of its claim that Davis owed it that interest. If Anderson's claim fails, so does that of Ragin. Therefore, since we have found that Anderson has not earned an interest in the leases and/or well, the trial court's ruling requiring Anderson to deliver a 5% interest to Ragin is reversed.

CONCLUSION

For these reasons, the judgment of the trial court is reversed. Judgment is rendered in favor of Davis finding that Anderson failed to earn an interest in the leases or the well at issue here. Costs of this appeal are assessed to the Appellee, Anderson.

REVERSED AND RENDERED.

8