# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## WCA 17-125


**JACKIE WHITE**

**VERSUS**

**FUEL PLUS, LLC, ET AL.**


\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF RAPIDES, NO. 16-04242
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*
**CANDYCE G. PERRET**
**JUDGE**
\*\*\*\*\*\*\*\*\*


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Phyllis M. Keaty, and Candyce G. Perret, Judges.


**AMENDED, AND AS AMENDED, AFFIRMED.**

**Karen Reiners Winfrey**
**6031 Dawnridge Court**
**Baton Rouge, LA 70817**
**(225) 892-5653**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Fuel Plus Too, LLC**
    **The Louisiana Restaurant Association**

**Maria A. Losavio**
**Losavio Law Firm, LLC**
**1821 MacArthur Drive**
**Alexandria, LA 71315-2420**
**(318) 767-9033**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Jackie White**

**PERRET, Judge.**

In this workers' compensation case, plaintiff/appellee, Jackie White, was injured when boiling water and toxic cleaning chemicals spilled on her feet. She was working for defendant employer, Fuel Plus Too, LLC ("Fuel Plus"). Thereafter, Ms. White's treating physician requested authorization for a surgery involving a bilateral trans metatarsal amputation of her feet, with flaps, inpatient hospitalization, and treatment. The defendant insurer, the Louisiana Restaurant Association, hired Novare Utilization Review ("UR"), which recommended approval of the surgery and treatment, and the defendants initially approved the request; however, the adjuster rescinded the approval and denied the surgery two days before the scheduled date. The Workers' Compensation Administration's Medical Director also denied the recommended medical treatment stating that the "procedure is not covered by the guidelines." Ms. White appealed this decision to the Workers' Compensation Judge ("WCJ"), who, after a hearing, reversed the decision of the Medical Director and granted authorization for the surgery and post-operative care. The defendants brought this appeal. For the following reasons, we affirm the WCJ's decision and amend the judgment to include an award of attorney's fees in the amount of $5,000.00, and a penalty award in the amount of $2,000.00. We also award additional attorney's fees of $3,000.00 to Ms. White for work on this appeal.

**FACTS**

On January 11, 2016, Ms. White was working for Fuel Plus when she spilled hot water and chemicals on her feet while cleaning out a cooking fryer that contained grease. Ms. White alleged injuries to her feet, and her claim was accepted as compensable by Fuel Plus and its workers' compensation carrier, Louisiana Restaurant Association. Thereafter, Ms. White began receiving indemnity benefits and necessary medical treatment.

2

On March 16, 2016, Dr. Darrell Henderson began treating Ms. White for the chemical and thermal burns on her feet. In April 2016, Dr. Henderson filed a form 1010 with the defendants requesting authorization for Ms. White to undergo a bilateral metatarsal amputation of her feet, with flaps, and inpatient hospital stay and treatment thereafter. On April 22, 2016, the defendants' UR doctor (a licensed orthopedist) opined that the surgery and post-operative care being recommended by Dr. Henderson was medically necessary and reasonable and approved the request. Specifically, the UR approval stated as follows:

> In this case, the patient still had hyperextension of the toes at approximately 45 degrees to 50 degrees. The patient had extreme pain when trying to flex or extend the toes. Putting pressure on the metatarsals did not cause much pain, but putting pressure on the top part of the feet caused pain. The provider has extensively explained the medical necessity and appropriateness of the requests. The provider has discussed the seriousness and the possible outcomes of the surgical plan with rehabilitation. The provider has documented extensively the plan, possible outcome, and course associated with this request. The request is supported by the guidelines. Thus, the request is medically necessary.

However, in May of 2016, the adjuster rescinded the approval and denied the surgery.

Ms. White timely filed a form 1009 to request a medical review of the claim with the Office of Workers' Compensation Administration ("OWCA"). On June 24, 2016, Dr. Jason Picard, the Associate Medical Director,[1] denied the medical treatment due to the procedure's not being covered by the guidelines. Ms. White timely filed a form 1008 Disputed Claim for Compensation, seeking to have the denial reviewed by the WCJ. Thereafter, on October 6, 2016, the WCJ overturned Dr. Picard's ruling and ordered the defendants to authorize the surgery.

The defendants now appeal the WCJ's judgment, arguing the following two assignments of error: (1) whether the trial judge erred in reviewing the appeal as a

---

[1] Under La.R.S. 23:1203.1, the medical director is a physician who is licensed to practice medicine in the State of Louisiana and has been chosen by the director of the Office of Workers' Compensation Administration for settling disputes.

"variance" from the Louisiana medical reimbursement guidelines; and (2) whether the trial judge erred in failing to review the appeal as a request for medical benefits pursuant to the medical guidelines.

Ms. White answered the appeal, asserting as error the trial court's failure to award penalties and fees. She argues that she is entitled to penalties and attorney's fees for the defendants' failure to authorize the surgery recommended by Dr. Henderson and also authorized by their UR doctor. Ms. White further argues that she is entitled to attorney's fees as a result of the work necessitated by the defendants' appeal.

**STANDARD OF REVIEW**

"Factual findings in workers' compensation cases are subject to the manifest error/clearly wrong standard of review." *Turner v. Lexington House*, 14-1264, p.4 (La.App. 3 Cir. 4/15/15), 176 So.3d 1071, 1076 *writ denied*, 15-952 (La. 8/28/15), 176 So.3d 405. Under this rule, the reviewing court does not decide whether the WCJ was right or wrong, but only whether its findings are reasonable. *Buxton v. Iowa Police Dep't.*, 09-0520 (La. 10/20/09), 23 So.3d 275. "However, where legal error interdicts the fact-finding process, the manifest error standard is no longer appropriate[,] and the appellate court will conduct a de novo review." *Shailow v. Gulf Coast Social Servs.*, 15-91, p. 4 (La.App. 3 Cir. 6/10/15), 166 So.3d 1239, 1244, *writs denied*, 15-1336, 15-1355 (La. 10/9/15), 178 So.3d 1002 and 1003 (citing *Guillory v. Wal-Mart Stores, Inc.*, 01-127 (La.App. 3 Cir. 10/3/01), 796 So.2d 772, *writ denied*, 01-2988 (La. 1/25/02), 807 So.2d 844).

**DISCUSSION**

The issue before this court is whether the WCJ correctly reversed the decision of the OWCA Medical Director and ordered defendants to authorize Ms. White's request for surgery involving a bilateral trans metatarsal amputation of feet with flaps, and a ten day stay in the hospital for post-operative care with

hyperbaric oxygen therapy. The Louisiana Supreme Court, in *Church Mutual Insurance Co. v. Dardar*, 13-2351, p. 5 (La. 5/7/14), 145 So.3d 271, 275-76, addressed the applicability of La.R.S. 23:1203.1, which provides for the adoption of a medical treatment schedule for use in making medical treatment decisions in workers' compensation matters, and stated as follows:

> Enacted by the legislature in 2009, La. R.S. 23:1203.1 is the product of a combined endeavor by employers, insurers, labor, and medical providers to establish meaningful guidelines for the treatment of injured workers. 1 DENIS PAUL JUGE, LOUISIANA WORKERS' COMPENSATION, § 13:6 (2d ed.2013). Dissatisfied with a process for obtaining needed medical treatment that was cumbersome, uncertain and often fraught with expense, employers and their insurers perceived a need for guidelines that would assure them that the treatment recommended by a medical provider was generally recognized by the medical community as proper and necessary. *Id.* In a similar vein, labor and their medical providers were concerned about the unreasonable delays regularly encountered in obtaining approval for treatment when disputes arose as to the necessity for the treatment and with having a procedure for obtaining approval for treatment that might vary from established guidelines. *Id.* Thus, La. R.S. 23:1203.1 was enacted with the express intent "that, with the establishment and enforcement of the medical treatment schedule, medical and surgical treatment, hospital care, and other health care provider services shall be delivered in an efficient and timely manner to injured employees." La. R.S. 23:1203.1(L).

The court in *Dardar* further articulated:

> With the express intent of delivering health care services to injured employees "in an efficient and timely manner," La.R.S. 23:1203.1 adopts evidence-based medicine as the guidepost for assessing whether the medical care required to be provided under La.R.S. 23:1203 is necessary. **To that end, La.R.S. 23:1203.1 requires the promulgation of a medical treatment schedule, which consists of a list of preauthorized procedures, administratively developed and approved according to criteria set forth by the statute. These preauthorized procedures provide a benefit and advantage to injured workers and their treatment providers who are relieved of the burden of establishing the medical necessity of the**

> **preauthorized procedures and, at the same time, impose a clear-cut obligation on employers.** By their terms, La. R.S. 23:1203.1 and the medical treatment schedule do not exclude any particular care. Instead, these provisions represent and reflect a rational policy choice by the legislature to confer authority on the Director of the OWC, with the assistance of the medical advisory council and the medical director, to determine in advance the medical necessity for certain medical care, in particular circumstances, in order to avoid case-by-case disputes and variations and to streamline the process.

*Id.* at 284 (emphasis added) (footnotes omitted).

At the hearing, the WCJ reviewed the UR report and pertinent statutes in open court and found that Ms. White provided clear and convincing evidence that she is entitled to the trans metatarsal amputations and that the defendants, and the OWCA Medical Director erred in denying the request.

On appeal, the defendants merely argue that the WCJ erred in reviewing the requested medical treatment as one not covered by the guidelines and that the WCJ "assumed the request was for a variance and ignored the fact that the Form 1010 did not seek a variance from the guidelines." The defendants further argue that the WCJ ignored the fact that the ruling by the OWCA Medical Director made no reference to a request for a variance. Thus, the defendants allege that, because the appeal of the request was reviewed improperly by the WCJ, his decision to overturn the OWCA Medical Director is also improper and that the case should be remanded to the WCJ for a proper review.

Conversely, Ms. White argues that the OWCA Medical Director's basis of the denial of the surgery was in error because the Louisiana Medical Treatment Guidelines specifically contain authorization for amputation of portions of the lower extremity in Chapter 23, Section 2313, which specifically authorizes amputation of "non-useful or non-viable portions of the extremity." Thus, Ms. White argues that the amputation of the toes is a pre-authorized medical treatment and that the defendants' variance argument is a red herring because there is no

variance required for the surgery. Further, Ms. White argues that even if the post-operative care, including the ten days of inpatient hospitalization and the hyperbaric oxygen therapy to increase healing, is not covered under the Louisiana Medical Treatment Guidelines, the 1009 form promulgated by OWCA does not require her to check off whether it's a variance or not.

After a review of the record and the pertinent law, we find no merit in the defendants' assignment of error that the WCJ improperly reviewed this appeal as a "variance" from the procedures allowed by the medical guidelines. Rather, we find that the WCJ correctly stated his findings that the amputation of the toes is a recognized evidence-based, pre-authorized medical treatment under the Louisiana Medical Treatment Guidelines and that although the ten days of inpatient hospital stay and hyperbaric therapy is not covered under the guidelines, it is covered under other recognized evidence-based treatment guidelines, such as the Official Disability Guidelines-Treatment in Workers' Compensation (referred to as "ODG-TWC" or "ODG"), which were the basis of the UR doctor's determination that the inpatient stay and hyperbaric treatment was medically necessary.

More specifically, La.R.S. 23:1203.1 allows the use of guidelines accepted by other states as long as they meet the same specific criteria used in promulgating the Louisiana Medical Treatment Schedule (often referred to as Guidelines). Louisiana Revised Statutes 23:1203.1 (emphasis added), entitled "Definitions; medical treatment schedule; medical advisory council," provides in pertinent part:

> C. The schedule shall be developed by the conscientious, explicit, and judicious use of current best evidence in making decisions about the care of individual patients, integrating clinical expertise, which is the proficiency and judgment that clinicians acquire through clinical experience and clinical practice, with the best available external clinical evidence from systematic research.

D. The medical treatment schedule shall be based on guidelines which shall meet all of the following criteria:

(1) Rely on specified, comprehensive, and ongoing systematic medical literature review.

(2) Contain published criteria for rating studies and for determining the overall strength of the medical evidence, including the size of the sample, whether the authors and researchers had any financial interest in the product or service being studied, the design of the study and identification of any bias, and the statistical significance of the study.

(3) Are current and the most recent version produced, which shall mean that documented evidence can be produced or verified that the guideline was developed, reviewed, or revised within the previous five years.

(4) Are interdisciplinary and address the frequency, duration, intensity, and appropriateness of treatment procedures and modalities for all disciplines commonly performing treatment of employment-related injuries and diseases.

(5) Are, by statute or rule, adopted by any other state regarding medical treatment for workers' compensation injuries, diseases, or conditions.

. . . .

I. After the promulgation of the medical treatment schedule, throughout this Chapter, and notwithstanding any provision of law to the contrary, medical care, services, and treatment due, pursuant to R.S. 23:1203 et seq., by the employer to the employee shall mean care, services, and treatment in accordance with the medical treatment schedule. *Medical care, services, and treatment that varies from the promulgated medical treatment schedule shall also be due by the employer when it is demonstrated to the medical director of the office by a preponderance of the scientific medical evidence, that a variance from the medical treatment schedule is reasonably required* to cure or relieve the injured worker from the effects of the injury or occupational disease given the circumstances.

J. (1) After a medical provider has submitted to the payor the request for authorization and the information required by the Louisiana Administrative Code, Title 40, Chapter 27, the payor shall notify the medical provider of

their action on the request within five business days of receipt of the request. *If any dispute arises after January 1, 2011, as to whether the recommended care, services, or treatment is in accordance with the medical treatment schedule, or whether a variance from the medical treatment schedule is reasonably required* as contemplated in Subsection I of this Section, *any aggrieved party shall file*, within fifteen calendar days, *an appeal with the office of workers' compensation administration medical director* or associate medical director *on a form promulgated by the director*. The medical director or associate medical director shall render a decision as soon as is practicable, but in [any] event, not more than thirty calendar days from the date of filing.

. . . .

M. (1) With regard to all treatment not covered by the medical treatment schedule promulgated in accordance with this Section, all medical care, services, and treatment shall be in accordance with Subsection D of this Section.

In this case, the UR report from the professional reviewing company, Novare Utilization Review, found all of the requested procedures medically necessary. The medical schedule that it used to review the amputation surgery was the Louisiana Medical Treatment Schedule discussed above in La.R.S. 23:1203.1. That schedule is found at Louisiana Administrative Code, Title 40, Part I, Section 2313 (LAC 40.I.2313). The UR quoted the specific language from the Code to support its approval for the amputations. Thus, no variance was needed for the surgery.

The UR report stated that the ten-day post-operative hospitalization was not addressed in Louisiana's Medical Guidelines. Therefore, the reviewing company used length-of-stay guidelines for amputations, burns, and skin grafts from the Official Disability Guidelines, or ODG, quoting specific language and section numbers approving the requested hospitalization. As for the hyperbaric oxygen therapy, the UR again relied on the ODG, which stated that this therapy could improve the healing of wounds. The UR noted that Louisiana's guidelines, at

9

Section 2311, did not recommend the therapy for *non-operative* lower extremity *fractures*. However, there is no evidence that the therapy is not recommended for serious wounds such as acid-burned feet that require partial amputations. Therefore, the post-operative hospitalization and the oxygen treatments are supported by the ODG, and, have not been shown to be disallowed by Louisiana's Guidelines, indicating that no variance is required for that care either. Research reveals that Texas, Hawaii, Illinois, Ohio, California, Arizona, New Mexico, Indiana, District of Columbia, Oklahoma, and Tennessee[2] have adopted or rely upon the ODG in determining whether to approve medical treatment, though this list is not meant to be exhaustive. The most concise excerpt explaining the ODG states:

> A. The Industrial Commission of Arizona (Commission) has adopted the Work Loss Data Institute's *Official Disability Guidelines - Treatment in Workers Compensation (ODG)* as the standard reference for evidence-based medicine used in treating injured workers within the context of Arizona's workers' compensation system. By adopting and referencing the most recent edition (at the time of treatment), and continuously updated *Official Disability Guidelines*, the Commission can ensure the latest available medical evidence is used in making medical treatment decisions for injured workers.

Ariz. Admin. Code R20-5-1301.

Our research indicates that the ODG satisfies the criteria of La.R.S. 23:1203.1(D) and (M)(1). There is nothing in those paragraphs indicating that a variance is required if Louisiana guidelines do not address the treatment, and the guidelines used meet the criteria of the statute. We find that the WCJ correctly

---

[2]For example, *see*, 28 Tex. Admin. Code § 137.100; 85A Okl.St.Ann. § 16; Tenn. Code Ann. § 56-6-705; Haw. Admin. Code § 12-15-32; Cal. Code Regs. tit. 8, § 9792.20; Ariz.Admin. Code R20-5-1301; N.M. Admin. Code 11.4.7; and 631 Ind. Admin. Code 1-1-32. *See also*, *Rufina Delgado, Petitioner v. Sure Staff, Inc., Respondent*, 11 IL.W.C. 38020 (Ill. Indus. Com'n 5-3-13), 2013 WL 3381143; *State ex rel. Wilson v. Indus. Comm.*, 11AP-48, (Ohio Ct. App. 1/31/12), 2012 WL 266369; *In the Matter of Latanya M. Walker, Claimant v. Hadley Mem'l Hosp. c/o Specialty Hosps. of Am., & Chartis Co., Employer/carrier*, AHD 11-072, (D.C. Dept. Emp. Srvs. 3/2/12), 2012 WL 1320204.

reversed the Medical Director's decision and ordered the defendants to authorize the medical treatment.

Ms. White argues in her answer to the appeal that an award for penalties and attorney's fees is warranted because the defendants did not have sufficient medical information to reasonably controvert her request for the medical treatment and failed in their continuing duty to investigate the claim before denying it. We agree.

Louisiana Revised Statutes 23:1201 governs the award of penalties and attorney's fees in workers' compensation cases. The failure to authorize necessary medical treatment is considered a failure to furnish medical benefits, as required by La.R.S. 23:1203, and will subject the employer to penalties and attorney's fees pursuant to La.R.S. 23:1201(F). However, penalties and attorney's fees "shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control." La.R.S. 23:1201(F)(2).

Dr. Henderson's medical records reflect consistent symptoms and reports of pain and toe disfigurement throughout his treatment of Ms. White. Further, defendants had in their possession, at the time they denied the surgery, their own UR doctor's report that recommended surgery and post-operative care as being medically necessary and reasonable. There is nothing in the record that reasonably controverted Ms. White's request, yet the adjuster denied it nonetheless. Considering the evidence in the record, the medical opinion of Dr. Henderson, and defendants own UR doctor's opinion dated April 22, 2016, finding that the amputation and inpatient hospital stay with hyperbaric therapy was medically necessary, we find that Ms. White is entitled to an award for penalties and attorney's fees for the defendants' failure to authorize said surgery and post-surgery care. Accordingly, we amend the judgment, to include an award for a

11

penalty in the amount of $2,000.00, and an award of attorney's fees in the amount of $5,000.00.

Ms. White also seeks additional attorney's fees for this appeal. It is within the appellate court's discretion to award or increase attorney's fees to a workers' compensation claimant for defending an unsuccessful appeal. *Frith v. Riverwood, Inc.*, 04-1086 (La. 1/19/05), 892 So.2d 7. Accordingly, we find that an additional award of $3,000.00 is appropriate to compensate Ms. White's counsel for work performed in connection with this appeal.

**DECREE**

We amend the judgment to include a penalty award of $2,000.00, and an award for attorney's fees in the amount of $5,000.00. Further, the judgment is amended to award Ms. White additional attorney's fees of $3,000.00 for work done in the appellate court. The judgment, as amended, is affirmed.

**AMENDED, AND AS AMENDED, AFFIRMED.**