# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 19-232

MICHAEL GREENE

VERSUS

TOWN OF LAKE ARTHUR

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DISTRICT 3
PARISH OF CALCASIEU, NO. 18-05115
DIANNE M. MAYO, WORKERS' COMPENSATION JUDGE

**********

**CANDYCE G. PERRET
JUDGE**

**********

Court composed of Shannon J. Gremillion, Candyce G. Perret, and Jonathan W. Perry, Judges.

**REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.**

**Joy C. Rabalais
Kyle N. Choate
Borne, Wilkes & Rabalais, L.L.C.
Post Office Box 4305
Lafayette, LA   70502-4305
(337) 232-1604 Ext. 232
COUNSEL FOR DEFENDANT/APPELLANT:**
    **Town of Lake Arthur**

**Michael B. Miller**
**Jacqueline K. Becker**
**Miller & Associates**
**Post Office Drawer 1630**
**Crowley, LA   70527-1630**
**(337) 785-9500**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**Michael Greene**

**PERRET, Judge.**

This appeal arises from the Workers' Compensation Judge's ("WCJ") denial of the Town of Lake Arthur's ("Employer") 1008 Disputed Claim for Compensation. Employer challenged the Medical Director's approval of employee/claimant's surgery prior to Employer being able to obtain a scheduled second medical opinion and moved for an independent medical examination ("IME"). On appeal, we reverse in part, affirm in part, and remand for further proceedings consistent with this opinion.

**FACTS AND PROCEDURAL BACKGROUND:**

Michael Greene, claimant, was injured in a work-related accident on September 23, 2008. Mr. Greene filed a 1008 Disputed Claim for Compensation thereafter. The case was stayed pursuant to a Joint Motion and Order to Stay dated April 15, 2014. On December 14, 2017, the stay was lifted and the 1008 was dismissed without prejudice. The December 14, 2017 Judgment also permitted either party to file another 1008 in the future.

On March 3, 2018, Mr. Greene's treating physician, Dr. Mark McDonnell, requested a psychological evaluation for a discography/spine surgery. Employer denied the treatment "pending second medical opinion [("SMO")] with Dr. [Fraser] Garr[,]" Employer's choice of orthopedist. Dr. Garr last evaluated Mr. Greene on May 12, 2014, and produced a report opining that Mr. Greene did not require further surgical intervention for his neck or low back. Instead, Dr. Garr opined that Mr. Greene was at maximum medical improvement. Dr. Garr's 2014 report was attached to Employer's denial.

Due to Dr. Garr's death, Employer selected a new orthopedist, Dr. Alexander Michael, and scheduled an appointment for Mr. Greene on April 12,

2018. The appointment was noticed by certified mail to Mr. Greene's attorney and dated March 13, 2018. Mr. Greene failed to appear at the appointment. The appointment was rescheduled for May 10, 2018, and notice was delivered via certified mail to Mr. Greene's attorney on April 20, 2018. In response to Mr. Greene's May 2018 inquiry regarding Dr. Michael's licensing, Employer faxed Dr. Michael's curriculum vitae to counsel on May 4, 2018, prior to the appointment.

Mr. Greene failed to appear for the second scheduled appointment with Dr. Michael on May 10, 2018. The appointment was rescheduled a third time for July 10, 2018, notice being delivered via certified mail on June 4, 2018. On June 8, 2018, Mr. Greene's counsel requested additional information from Employer regarding Dr. Michael. Employer provided the requested information on July 5, 2018.

Before the third rescheduled appointment, Dr. McDonnell filed a second request for treatment around June 21, 2018, this time for approval of a "PLIF L4-5 [posterior lumbar interbody fusion][1], intraoperative epidural injection, post-op bracing, [and] spinal implants." Attached to the request were Dr. McDonnell's records as well as an evaluation by Dr. Jean Boudreaux, a licensed psychologist. Dr. Boudreaux opined on May 1, 2018: "Pre-surgical/preprocedural, psychological prognosis is *poor* at this time, dominated by concerns with regard to ETOH [ethyl alcohol] use. I recommend psychotherapy and consideration of recovery meetings. From a psychological perspective, surgical delay appears indicated and it may be advisable for him to be cleared by an addictionologist." On May 8, 2018, Dr. Boudreaux further advised:

---

[1] On a separate form, Dr. McDonnell specifically requests a "Posterior lumbar decompression, instrumentation, and fusion L4-5" as well as "Intraoperative epidural injection[,]" "Postoperative bracing[,]" and "Spinal implants[.]"

> [I]t is my impression that if he [Mr. Greene] does totally d/c ETOH as he claims he will, I believe medical professionals could verify this, and that would meet my concerns as well. That is, if it were medically documented he is free from ETOH, that would obviate the need for an addictionology consultation in my opinion.

Employer denied the second request for treatment on June 25, 2018, "pending the SMO scheduled for 7/10/18[.]"

Based on Employer's denial, on June 27, 2018, before the third re-scheduled SMO appointment, Mr. Greene filed a 1009 Disputed Claim for Medical Treatment requesting review by the Medical Director. Employer responded and provided the Medical Director with Dr. Garr's 2014 SMO report, Dr. Boudreaux's psychiatric report, and Mr. Greene's last MRI that Employer had on file. Employer also advised the Medical Director that a SMO appointment was scheduled for July 10, 2018.

In the interim, Mr. Greene failed to appear a third time for the scheduled SMO on July 10, 2018. Thereafter, the appointment was rescheduled for August 17, 2018, and notice received on July 18, 2018.

However, prior to the fourth rescheduled SMO, the Medical Director issued an opinion on July 18, 2018, approving the PLIF surgery that Dr. McDonnell requested. The Medical Director reviewed the records submitted and concluded that the treatment requested was covered by the medical treatment schedule. Specifically, the Medical Director noted: "The patient has radicular pain and failure of conservative therapy per the guidelines."

Employer appealed the Medical Director's decision on July 27, 2018, by filing a 1008 Disputed Claim for Compensation, along with filing a motion to compel claimant to submit to a medical examination. The motion to compel was dismissed after Mr. Greene appeared for the fourth scheduled appointment with Dr.

3

Michael. In its 1008, Employer argued that the Medical Director's opinion was premature, as it was made before the SMO was obtained, despite being informed that said appointment was scheduled. Employer argued that in rendering his opinion, the Medical Director deprived Employer of its statutory right to a SMO under La.R.S. 23:1121.

After obtaining the SMO, and based on Dr. Michael's opinion, Employer asserted that the SMO contradicted Dr. McDonnell's opinion for surgery. Therefore, Employer also filed a request for a court-appointed independent medical examiner ("IME") pursuant to La.R.S. 23:1124.1. Mr. Greene opposed the request, arguing that the issues are rightfully decided by the Medical Treatment Guidelines, not by an IME.

Both the appeal of the Medical Director's decision and the motion for an IME were heard on December 19, 2018. The WCJ denied both, finding that Employer failed to prove by clear and convincing evidence that the Medical Director's decision was not in accordance with the Medical Treatment Guidelines. Regarding the SMO procedural issue, the WCJ stated:

> A review of the record and the evidence that was presented here today is that the SMO report was submitted after the decision by the medical director was made, and in the content of the SMO report as well as arguments of counsel, the Court here finds that there is no clear and convincing evidence to overturn the medical director's decision. In fact, the problem that occurred here has not been addressed in the medical guidelines, so I can only impose and follow the law that is on the record as it is now, and the evidence that was presented today does not rise to that clear and convincing, which I must have . . . .

Thereafter, the WCJ ruled on the motion to compel an IME:

> I'm going to deny that request also because the psychiatrist said that his would [sic] be poor and he recommended certain things that should be down [sic], but he also said that it was a medical decision. The SMO never pointed to anything in the medical guidelines that

4

would prohibit the medical necessity for the surgery and, therefore, based upon that, I am going to deny both the appeal and the request for an IME.

This appeal from the WCJ's denials now follows. Employer assigns two assignments of error:

       I.     Whether the WCJ committed error in failing to find that the Medical Director's premature decision was in violation of the employer's statutory right to obtain a second medical opinion for submission prior to decision; whether the WCJ used an inappropriate standard of review on Employer's appeal; and whether the WCJ committed error in refusing to grant Employer's request for court-appointed IME physicians;

       II.     Whether the Medical Director's premature decision to approve a surgery, despite [Employer] advising that an SMO appointment was pending which would directly address the issue of medical necessity, deprived [Employer] of its statutory right to have the SMO examination to allow the Medical Director to base his decision on medical necessity with all information required by law.

Employer also requests that this court remand the case to obtain an IME and to re-submit all medical evidence to the Medical Director for review and ruling.

**STANDARD OF REVIEW:**

"Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review." *Banks v. Industr. Roofing & Sheet Metal Works, Inc.*, 96-2840, p. 7 (La. 7/1/97), 696 So.2d 551, 556. The manifest error standard is also used when reviewing the WCJ's judgment affirming or reversing the Medical Director's decision. *Lowery v. Jena Nursing and Rehab.*, 14-1106 (La.App. 3 Cir. 4/1/15), 160 So.3d 620. "The manifest error standard requires that we review the record in its entirety to determine not whether the WCJ was wrong, but whether the record reflects a reasonable basis for the WCJ's decision." *Vital v. Landmark of Lake Charles*, 13-842, pp. 2-3 (La.App. 3 Cir. 2/12/14), 153 So.3d 1017, 1019. "However, where legal error interdicts the fact-

5

finding process, the manifest error standard is no longer appropriate[,] and the appellate court will conduct a de novo review." *White v. Fuel Plus, LLC*, 17-125, p. 4 (La.App. 3 Cir. 10/4/17), 229 So.3d 539, 542 (quoting *Shailow v. Gulf Coast Social Servs.*, 15-91, p. 4 (La.App. 3 Cir. 6/10/15), 166 So.3d 1239, 1244, *writs denied*, 15-1336, 15-1355 (La. 10/9/15), 178 So.3d 1002 and 1003).

**DISCUSSION:**

At issue in this case is an employer's entitlement to a SMO and the process once a denial of a request for authorization is appealed to the Medical Director. Employer argues that the standard applied by the WCJ in reviewing the Medical Director's decision should not have been clear and convincing, and that the WCJ should have reversed the Medical Director's decision because it deprived Employer its statutory right to a SMO. On the other hand, Mr. Greene asserts that the Medical Director's decision was to be based on the Medical Treatment Guidelines. If the Medical Treatment Guidelines approved the recommended surgery for Mr. Greene's complaints, the Medical Director was correct in his approval and the WCJ was correct in finding no clear and convincing error in the Medical Director's decision. The legislature has spoken on both of these issues— requesting treatment authorization and an employer's entitlement to a SMO.

In order to deliver "medical and surgical treatment, hospital care, and other health care provider services" in "an efficient and timely manner to injured employees[,]" the legislature established the medical treatment schedule. La.R.S. 23:1203.1(L). The procedure to request authorization for medical care is straightforward:

> J. (1) After a medical provider has submitted to the payor the request for authorization and the information required by the Louisiana Administrative Code, Title 40, Chapter 27, the payor shall

6

notify the medical provider of their action on the request within five business days of receipt of the request. If any dispute arises after January 1, 2011, as to whether the recommended care, services, or treatment is in accordance with the medical treatment schedule, or whether a variance from the medical treatment schedule is reasonably required as contemplated in Subsection I of this Section, any aggrieved party shall file, within fifteen calendar days, an appeal with the office of workers' compensation administration medical director or associate medical director on a form promulgated by the assistant secretary. The medical director or associate medical director shall render a decision as soon as is practicable, but in no event, not more than thirty calendar days from the date of filing.

. . . .

K. After the issuance of the decision by the medical director or associate medical director of the office, any party who disagrees with the decision may then appeal by filing a "Disputed Claim for Compensation", which is LWC Form 1008, within forty-five days of the date of the issuance of the decision. The decision may be overturned when it is shown, by clear and convincing evidence, the decision of the medical director or associate medical director was not in accordance with the provisions of this Section.

La.R.S. 23:1203.1.

Similarly, the Louisiana Administrative Code, Title 40, also explains the review process for obtaining medical treatment authorization. Specifically, the purpose of LAC 40:I.2715 is to:

facilitate the management of medical care delivery, assure an orderly and timely process in the resolution of care-related disputes; identify the required medical documentation to be provided to the carrier/self-insured employer to initiate a request for authorization as provided in [La.]R.S. 23:1203(J); and provide for uniform forms, timeframes, and terms for suspension of prior authorization process, withdrawal of request for authorization, authorization, denial, and dispute resolution in accordance with [La.]R.S. 23:1203.1.

Once a provider requests authorization for medical treatment on Form 1010, the employer/insurer must "determine whether the request for authorization is in accordance with the medical treatment schedule" and may approve, deny, or approve with modification, wherein the employer would decide to "request a

7

variance from the medical director." LAC 40:I.2715(G)(1) and LAC 40:I.2715(B)(3)(d). If the employer/insurer denies the request, it must include "a summary of reasons why the request for authorization is not in accordance with the medical treatment schedule." LAC 40:I.2715(G)(1)(c). If denied, the claimant is encouraged to contact the employer/insurer to discuss reconsideration of the denial. LAC 40:I.2715(I)(1)(2).

A claimant may seek review of a denial of a request for authorization with the Medical Director by filing Form 1009. LAC 40:I.2715(J). The claimant must include the reason for the request, a copy of the Form 1010 showing the history of communication with the employer, and all information previously submitted to the employer. LAC 40:I.2715(J)(2). In response, within five days of receipt of the 1009, an employer/insurer "shall provide to the medical director . . . any evidence it thinks pertinent to the decision regarding the request being denied[.]" LAC 40:I.2715(J)(5)(a). Part of this evidence may be the SMO, which an employer is entitled to obtain under LAC 40:I.2711 when surgery is recommended. *See Gilliam v. Brooks Heating & Air Conditioning*, 49,161 (La.App. 2 Cir. 7/16/14), 146 So.3d 734.

The Medical Director shall then render a decision within thirty days of receipt of the 1009. The Medical Director considers the evidence submitted by the claimant as well as the employer's evidence, if submitted within five business days. LAC 40:I.2715(J)(5)(b). The decision will include a determination of:

> [W]hether the request for authorization is medically necessary and is:
>
>> i. in accordance with the medical treatment schedule: or
>>
>> ii. in accordance with [La.]R.S. 23:1203.1(D) if such request is not covered by the medical treatment schedule, or

iii. whether the health care provider or claimant demonstrates by a preponderance of the scientific medical evidence that a variance from the medical treatment schedule is reasonably required. The decision of the medical director shall be provided in writing to the health care provider, claimant, claimant's attorney if one exists, and Carrier/Self-Insured Employer.

LAC 40:I.2715(J)(5)(b).

The Medical Director must review any claims submitted for "medical necessity and compliance with the medical treatment schedule and the provisions of [La].R.S. 23:1201.1." LAC 40:I.2717(D). Louisiana Administrative Code 40:I.2717 (footnote omitted) further explains:

Medical necessity implies the use of technologies [FN1] services, or supplies provided by a hospital, physician, or other provider that is determined to be:

a. medically appropriate for the symptoms and diagnosis or treatment of the work-related illness or injury;

b. provided for the diagnosis or the direct care and treatment of the patient's illness or injury;

c. in accordance with the medical treatment schedule and the provisions of R.S. 23:1203.1; and

d. not primarily for the convenience of the patient, patient's family, practitioner or provider; and

e. the most appropriate level of service that can be provided to the patient.

2. Additional Medical Record Information. It is the responsibility of the claimant and provider to furnish all medical documentation needed by the carrier/self-insured employer to determine if the injury or illness is job related and if the services are medically necessary for the condition of the claimant (e.g., physician office record, hospital medical record, doctor's orders, treatment plan, vital signs, lab data, test results, nurses' notes, progress notes).

Thereafter, any aggrieved party may appeal the Medical Director's decision to the WCJ by filing Form 1008.

9

Another section of the administrative code deals with the review process for pre-admission certification, which is to be done prior to admission to the hospital in non-emergent circumstances. *See* LAC 40:I.2705. The care provider or claimant is required to call the carrier and provide the information listed in LAC 40:I.2705(C), which is the required information referenced to as "Chapter 27" in La.R.S. 23:1203.1(J)(1). The carrier is tasked with using registered nurses to initially review proposed hospitalizations. LAC 40:I.2705(D)(6)(a). The carrier is to respond to the requester verbally within two calendar days and with a written response following within five calendar days. LAC 40:I.2705(D)(6)(b). During this review, review nurses should check for compliance with a second surgical opinion. LAC 40:I.2705(D)(8).

It is not disputed that Mr. Greene, after receiving Employer's denial of Dr. McDonnell's authorization request for the PLIF surgery, properly filed a 1009 with the Medical Director. Employer also submitted additional information to the Medical Director. Additionally, this Court notes that the Medical Director rendered a decision in accordance with the timeframe set forth by the statutes above.

What Employer argues is that, due to Mr. Greene's failure to appear at three scheduled SMO appointments prior to the Medical Director's decision, Employer was not able to submit the SMO to the Medical Director; thus, Employer was denied its right to a SMO. Under LAC 40:I.2711, the insurer/employer is entitled to a SMO when surgery has been recommended by claimant's treating physician. Specifically, LAC 40:I.2711 states:

> A. When surgery has been recommended by the treating physician, the carrier/self-insured employer is entitled to obtain a second professional opinion from a physician chosen by the

10

carrier/self-insured employer. Regardless of the second surgical opinion outcome, the claimant remains free to elect not to undergo surgery after the consultation. The carrier/self-insured employer is responsible for informing the claimant when a second surgical opinion is required and for referring the claimant to a second surgical opinion physician. . . .

B. Second Surgical Opinion Procedures

1. The following is a list of surgical procedures that usually require a second opinion.

| | |
|---|---|
| Spinal Surgery | Foot Surgery |
| Gastrectomy | Hemorrhoidectomy |
| Coronary Artery Bypass | Varicose Vein Surgery |
| Knee Surgery | Traumatic Cataract Surgery |
| Nasal Surgery | Joint Replacement |

Louisiana Administrative Code Title 40, Part I, Chapter 27, Section 2703 also provides for a "second surgical opinion[,]" which is a managed care activity required by the Louisiana Workers' Compensation Act that "enable[s] claimants to receive a consultation from a second physician before undergoing specified surgical procedures." LAC 40:I.2703. Further "[m]anaged care activities are defined as a set of coordinated cost and utilization management activities by the carrier/self-insured employer to assure appropriate payment for health care services rendered to employees eligible for workers' compensation benefits[.]" *Id.*

Louisiana Revised Statutes 23:1121(A) also states:

A. An injured employee shall submit himself to an examination by a duly qualified medical practitioner provided and paid for by the employer, as soon after the accident as demanded, and from time to time thereafter as often as may be reasonably necessary and at reasonable hours and places, during the pendency of his claim for compensation or during the receipt by him of payments under this Chapter. The employer or his workers' compensation carrier shall not require the employee to be examined by more than one duly qualified medical practitioner in any one field or specialty unless prior consent has been obtained from the employee.

*See also Walker v. Summit*, 14-676 (La.App. 3 Cir. 11/5/14), 150 So.3d 962.

11

In this case, Mr. Greene did not appear for three scheduled SMO appointments, two before Dr. McDonnell filed the 1009 dispute with the Medical Director and one before the Medical Director rendered a decision. By not appearing for these appointments, but then filing a Form 1009, Mr. Greene effectively deprived Employer of obtaining the SMO it was entitled to when surgery was recommended. Had Mr. Greene timely submitted to the SMO, Employer may have approved the requested treatment with possible modifications, submitted the SMO to the Medical Director for consideration, and/or requested a variance for the treatment from the Medical Director depending on what was recommended by the SMO.

Coincidently, Mr. Greene finally appeared for the SMO appointment after the Medical Director rendered a decision, after Employer appealed that decision to the WCJ, and after Employer sought a motion to compel Mr. Greene to appear for the fourth scheduled appointment with Dr. Michael.

Mr. Greene was aware that Dr. McDonnell's request for authorization was denied pending the SMO because Employer specifically indicated such in both its response to the March 2018 request and the June 2018 request. The employee has a right to appeal to the Medical Director and the timeline for that process once initiated is statutorily set forth. However, under this particular set of facts, wherein Employer was denying treatment pending the SMO which it was entitled to under LAC 40:I.2711 and the reason the SMO was still pending was Mr. Greene's failure to appear three times, we find it was legal error for the WCJ to affirm the Medical Director's decision when the Medical Director did not have the SMO.

Employer also asserts on appeal that the WCJ erred in denying Employer's motion for an IME. Employer alleges that an IME is necessary because Dr.

Michael and Dr. Boudreaux's opinions contradict Dr. McDonnell's opinion. Louisiana Revised Statutes 23:1123 as revised and made effective in 2017 reads: "If any dispute arises as to the condition of the employee, or the employee's capacity to work, the assistant secretary, upon application of any party, shall order an additional medical opinion regarding an examination of the employee to be made by a medical practitioner selected and appointed by the assistant secretary."[2] Additionally, La.R.S. 23:1124.1 states, "the workers' compensation judge, on his own motion, may order that any claimant appearing before it be examined by other physicians."

Additionally, the third circuit in *Edwards v. Plant Works*, 13-1112, p. 5 (La.App. 3 Cir. 8/6/14), 145 So.3d 1108, 1112, recognized that the "WCJ possesses the authority . . . to order an IME of the injured worker pursuant to La.R.S. 23:1123[.]" The third circuit further explained: "While we recognize that a 2012 amendment to La.R.S. 23:1123 **removed language which allowed the WCJ to order an IME when a dispute arose over medical treatment recommended for the employee**, the WCJ still retains the authority to order an IME whenever the employee's condition is called into question." *Id.* at 1112 (emphasis added). In *Edwards*, the WCJ determined an IME was necessary because "the factual situation before her was so convoluted that a second medical opinion regarding Ms. Edwards' medical condition was necessary to assist both the Medical Director and her in determining whether the requested surgery was medically necessary." *Id.*

---

[2] We note that the legislative materials use "Director" instead of "Assistant Secretary," which is how the statute appeared following the 2012 amendment. 2017 La.Sess. Law Serv. Act 381 (S.B. 121). There is no indication in the legislative materials that "Director" was to be replaced. However, "Director" is not defined by the definitions found in La.R.S. 23:1021, but "Assistant secretary" is defined.

Although the law was amended in 2012, the courts have consistently held that an IME is warranted under La.R.S. 23:1123 "when there is a dispute as to a claimant's condition." *Christus-Schumpert v. Herrin*, 45,233, p. 5 (La.App. 2 Cir. 5/19/10), 38 So.3d 1167, 1170; *see Edwards*, 145 So.3d 1108. In *Christus-Schumpert*, the appellate court reversed the WCJ's denial of an IME appointment finding that, while there was not only a dispute regarding the recommended future and ongoing treatment, there was also a dispute regarding the claimant's medical diagnoses. Therefore, the WCJ committed manifest error in denying the IME request.

Employer argues that the SMO disagreed with the medical necessity of the surgery recommended by Dr. McDonnell and, therefore, Employer filed a motion for IME. Additionally, Employer asserts that the psychologist's opinion also contradicted Dr. McDonnell's opinion that Mr. Greene was a good candidate for surgery. Specifically, Employer asserted that the IME was necessary "[i]n light of the differing opinions of claimant's treating orthopedic surgeon, . . . and the SMO physician, . . . and whether Claimant is psychologically cleared for surgery at this point[.]"

The WCJ found that the SMO did not contradict Dr. McDonnell's surgery recommendation, although it differed on the necessity of instrumentation. Additionally, the WCJ did not find Dr. Boudreaux's psychological opinion to contradict Dr. McDonnell. Specifically, the WCJ states:

> [T]he psychiatrist said that his would [sic] be poor and he recommended certain things that should be down [sic], but he also said that it was a medical decision. The SMO never pointed to anything in the medical guidelines that would prohibit the medical necessity for the surgery and, therefore, based upon that, I am going to deny both the appeal and the request for an IME.

Dr. McDonnell's records submitted to the Medical Director included Dr. McDonnell's review of Mr. Greene's 2017 lumbar MRI, which Dr. McDonnell noted showed "generalized spondylosis with a partially segmented lowest segment. There is no obvious instability but little movement on flexion and extension laterals." After obtaining a 2018 lumbar MRI, Dr. McDonnell notes "There is a far lateral disc herniation at L4-5 on the left, which is his symptomatic side. There is concurrent facet hypotrophy, which narrows the left foramen and the left lateral recess of the spinal canal." Dr. McDonnell then recommended posterior decompression, instrumentation, and fusion L4-5. Dr. McDonnell assessed Mr. Greene with "left L5 radiculopathy . . . on EMG[,]" "Far lateral disc herniation (implied annular tear) on the left with facet syndrome L4-5[,]" "progression of L4-5 injury previously documented on MRI[,]" and "Failure of physical therapy and injection treatment." After recommending and receiving a psychological test per the Medical Treatment Guidelines, Dr. McDonnell notes that "Dr. Boudreaux felt that the patient should quit alcohol, and the patient has done so to my satisfaction[,]" noting that Mr. Greene "quit alcohol and tobacco for over one month." Although Mr. Greene had continued experiencing neck and shoulder pain despite his cervical surgery, the most recent records, dated June 6, 2018, note that Mr. Greene's "posterior neck pain at about the shoulder level with burning down both arms is a lot better."

The SMO, Dr. Michael, opined that Mr. Greene's "MRI images are not consistent with acute findings" and that Mr. Greene "has unrelated pre-injury lumbar degenerative changes[,]" which are consistent with the MRI images. He continues, "the degenerative disc change at the L4-5 level is causing deformation of the left L4 nerve root past the neural foramen and would not cause pressure on

15

the left L5 nerve root which is symptomatic in Mr. Greene's case." Additionally, Dr. Michael opines that Mr. Greene does not have any spinal instability that would necessitate a fusion. He further opined regarding his "diagnostic impression" of Mr. Greene's lumbar spine: "Mr. Greene has objective findings on my physical exam consistent with radiculitis involving the left L5 nerve root with hypoesthesia along the left medial foot."

Dr. Michael's recommended plan of care would be "surgery for a non-work-related posterior decompression at L4-5 to address L5 nerve root compression[.]" This opinion is in agreement with Dr. McDonnell's recommendation for posterior decompression at L4-5. However, Dr. Michael disagreed with the need for fusion and instrumentation due to the lack of instability in Mr. Greene's lumbar spine as well as Mr. Greene's lack of improvement with facet injections. Additionally, Dr. Michael expressed his concerns for surgery, citing Dr. Boudreaux's psychological assessment and Mr. Greene's continued neck and arm pain despite two cervical surgeries, which should have relieved those symptoms. Specifically, Dr. Michael opines, "His failure to respond well to several conservative treatment programs of injections and physical therapy, with Dr. Boudreaux's recommendations, as well as minimal improvement from two cervical decompressions with fusions concerns me regarding the possibility of functional or pain improvements with any further surgery in Mr. Greene's case." Finally, Dr. Michael opines that Mr. Greene is at maximum medical improvement regarding his lumbar work injury.

Based on the above, we find no manifest error in the WCJ's denial of Employer's request for an IME.

**DECREE:**

For the reasons assigned, we find it was legal error for the WCJ to affirm the Medical Director's decision; however, we find no manifest error in the WCJ's denial of Employer's request for an IME. Thus, we affirm the denial of an IME, reverse the WCJ's affirmation of the Medical Director's decision, and remand to the WCJ with instructions for the parties to resubmit the medical evidence, including the SMO, to the Medical Director. Costs of this appeal, which are $335.50, are to be assessed equally between the parties.

**REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.**